1    UNITED STATES DISTRICT COURT

2    DISTRICT OF NEVADA

3    * * *

4    NATHAN LEFTENANT, ARNETT                    Case No. 2:18-CV-01948-RCJ-EJY
     LEFTENANT, JERYL BRIGHT and
5    GREGORY JOHNSON,

6          Plaintiff,                            **ORDER**

7          v.

8    LAWRENCE ("LARRY") BLACKMON,

9          Defendants.

10

11          Pending before the Court is Plaintiffs Nathan Leftenant, Arnett Leftenant, Jeryl Bright, and

12   Gergory Johnson's Motion for Leave to Amend the Complaint ("Plaintiffs' Motion"). ECF No. 22.

13   The Court has reviewed Plaintiffs' Motion, Defendant Lawrence Blackmon's Opposition (ECF No.

14   25), and Plaintiffs' Reply (ECF No. 30).

15                                      **Background**

16          Plaintiffs filed their original complaint on October 10, 2018, and Defendant filed his Answer

17   and Counterclaim on January 15, 2019.  On April 30, 2019 the Plaintiffs filed their instant motion

18   seeking leave to amend their complaint, which was fully briefed on May 31, 2019.  The undersigned

19   took the bench on August 6, 2019, at which time Plaintiffs' Motion was pending.

20          Plaintiffs' original complaint alleged three causes of action including tortious interference

21   with contract, conversion, and declaratory relief.  Plaintiffs' Amended Complaint seeks to add a

22   party, Tomi Jenkins, and to revise the causes of action asserted.  Specifically, Plaintiffs' Amended

23   Complaint seeks to assert four causes of action including tortious interference with contract, breach

24   of fiduciary duty, promissory estoppel, and declaratory relief.  Plaintiffs contend that Defendant does

25   not object to Plaintiff Tomi Jenkins being added as a plaintiff for purposes of seeking declaratory

26   relief, but that Defendant objects to all remaining proposed amendments.

27

28

1

1    Defendant Mr. Blackmon alleges he was "*a founding member of CAMEO*" thereby signaling

2  that he was not the only founding member of this musical group.  ECF No. 25 at 1:18-19 (emphasis

3  added); *see also* ECF No. 30 at 2.  Plaintiffs N. Leftenant, A. Leftenant, Johnson and Jenkins contend

4  they too are founding members of CAMEO, and that Plaintiff: (i) Jenkins appeared on all 18 of

5  CAMEO's albums as well as on its apparent current single "*El Paso*"; (ii) N. Leftenant "'was

6  considered the face of CAMEO' and appeared on more than … 16 CAMEO albums"; (iii) A.

7  Leftenant "appeared on more than … 7 CAMEO albums; (iv) Johnson "appeared on more than … 8

8  CAMEO albums [and] is credited for creating the name 'CAMEO'"; and, (v) Bright "became a

9  featured member of CAMEO's horn section, and appeared on more than … 5 CAMEO albums…"

10  ECF No. 23-1 ¶¶ 11-15, and 18.

11    Plaintiffs allege that they, together with Defendant, "agreed" that each current and future

12  member of CAMEO would receive an equal share of "record company advances against future

13  royalties and royalties for records that featured their vocal performances," as well as an equal share

14  of live performance income.  *Id*. ¶ 17.[1]  The alleged agreement with Plaintiff Bright was that he

15  "would receive an equal share of the net artist advances of future royalties, royalties and net live

16  performance income." *Id*. ¶ 19.  Defendant is further alleged to have served as CAMEO's producer

17  and to have "administered and managed the recording agreements, including recording funds,

18  organized live performances[, …] the branding activities of the band[,] … artist advances and …

19  [payment of] CAMEO expenses." *Id*. ¶¶ 23 and 29.

20    In various paragraphs of the proposed Amended Complaint, Plaintiffs allege that a number

21  of record distributing entities had agreements with CAMEO (or Atlanta Artist Records ("AAR"),

22  discussed below) that required the periodic payment of royalties for the benefit of the CAMEO

23  members.  *Id*. ¶¶ 27, 30, 35, 38, 48, 49, 58.  Plaintiffs contend that each of the agreements between

24  CAMEO and record distribution entities required CAMEO or AAR to pay advances and royalties

25  arising from CAMEO recordings to those persons or entities entitled to such payments.  *Id*. ¶¶ 30,

26  39, 50, 58.

27  ---

[1]    At some unidentified time, Plaintiffs allege that "Plaintiffs along with Defendant …, again agreed to

28  equally divide" net artist advances, royalties, and live performance fees among "featured artists who appeared
on recordings and participated in live performance." *Id.* ¶ 40.

It is not disputed that Defendant served as CAMEO's "producer" through, *inter alia*, AAR, a company alleged to have been formed as a Georgia corporation sometime after August 2, 1982. *Id*. ¶¶ 23 and 33. AAR is said to be owned by Plaintiffs N. Leftenant and, potentially, Jenkins, as well as Defendant. *Id*. ¶¶ 33 and 34. AAR is also said to have done business as "Better Days Music" and "Better Nights Music" beginning in August 1982. *Id*. ¶ 44. Plaintiffs next state that AAR was "administratively dissolved" on June 12, 1992, due to Defendant's "failure to handle administrative matters"; but then contend the entity "continued to operate as a partnership[,]" among Plaintiffs N. Leftenant, A. Leftenant, Bright, and Jenkins, together with Defendant, paying all CAMEO expenses from "net artist advances against royalties," royalties, and live performance income. *Id*. ¶¶ 51 and 52. At some unknown time, Plaintiffs allege that only Plaintiffs N. Leftenant and Jenkins, together with Defendant, continued to do business as a partnership under the names Atlanta Artist Records, Better Days Music, and Better Nights Music "in connection with CAMEO's recordings and musical compositions." *Id*. ¶ 53.[2] CAMEO is alleged to have produced its last album in 2000, but continued to perform as CAMEO "in the years following" this release up to the present. *Id*. ¶¶ 57 and 60.

Plaintiffs alleged that they "have never received their representative share of periodic payment of royalties" from any of the companies that distributed CAMEO's music. *Id*. ¶ 61. Plaintiffs allege Defendant received payment of royalties *due AAR*, but did not distribute those royalties to the Plaintiffs as required. *Id*. ¶ 62. Plaintiffs also admit that "[n]o taxes were withheld from any CAMEO distributions of net profits and no w-2's [sic] were issued to Plaintiffs." *Id*. ¶ 42.

In addition to the royalties and royalty advances paid by various distributors, Plaintiffs alleges that, as CAMEO "featured artists," they each entered into membership agreements with SoundExchange, a national royalty collection society that apparently collects and distributes digital performance royalties to recording artists and owners of music. *Id.* ¶¶ 70-75. Plaintiffs also allege they entered into membership agreements with AARC. *Id*. ¶ 97. Plaintiffs contend that Defendant had knowledge of Plaintiffs' agreements with both AARC and SoundExchange. *Id*. ¶ 100. While Plaintiffs allege that "featured artists" receive quarterly payments from SoundExchange and AARC

---

[2] In 1979, Plaintiffs and Defendant are alleged to have purchased a tour bus for CAMEO with CAMEO funds. *Id*. ¶ 32. From 1979 to 1990, Plaintiffs allege that Plaintiffs and Defendant purchased real estate and recording equipment as CAMEO. *Id*. ¶ 42.

upon entering into a membership agreement, in or around 2010, Defendant is alleged to have started collecting royalties from SoundExchange "acting as Plaintiffs' agent." *Id*. ¶¶ 76, 82, and 83. Plaintiffs do not state whether Defendant's role as agent was approved or unapproved; nevertheless, Plaintiffs state that Defendant represented to SoundExchange that he would pay Plaintiffs their share of royalties as featured artists. *Id.* ¶ 84. The same allegation is not made as to AARC. Defendant is alleged to have collected over $103,000 of Plaintiffs' SoundExchange royalties that he never distributed, and that Defendant never paid them their share of royalties received from AARC either. *Id*. ¶¶ 85-86.

After an apparent failed attempt at mediation, that would have been paid for by SoundExchange, this lawsuit was filed by Plaintiffs. *Id*. ¶¶ 92-93.

**Discussion**

The Court has broad discretion to grant an amendment to a complaint and may freely do so, "when justice so requires." Fed. R. Civ. P. 15(a)(2). Denial of a leave to amend may be justified, however, if the proposed amendment will cause undue delay, undue prejudice to the opposing party, a request to amend is made in bad faith, a party has repeatedly failed to cure deficiencies, or the amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008). Here, Defendant's opposition to Plaintiffs' proposed amended complaint is based solely on futility. ECF No. 25 at 1:12. The Court considers each of Defendant's arguments below.

*Plaintiffs' Proposed Tortious Inference with Contractual Relations Claim*

Plaintiffs' tortious interference claim is based on their membership agreements with SoundExchange and AAR, about which Defendant was aware, and which agreements must have preceded the time in 2010 when Defendant is alleged to have begun collecting royalties on behalf of Plaintiffs as their agent. ECF No. 23-1 ¶¶ 75, 83, 97, and 100. Plaintiffs claim that Defendant is wrongfully interfering with Plaintiffs' "contractual rights to receive royalties by claiming that he is solely entitled to" the SoundExchange and AARC royalties. *Id.* at 101. Further, Plaintiffs allege that their claims for royalties includes $103,005.30 in royalties already paid to Defendant by

4

1  SoundExchange and the supposed $200,000 in royalties SoundExchange "is holding" for CAMEO

2  as of March 2018. *Id.* ¶¶ 85 and 95.[3] Plaintiffs do not allege that AARC is holding any royalties for

3  CAMEO.

4       In order to state an intentional interference with contract claim under Nevada law, a plaintiff

5  must plead that there is a valid and existing contract about which the defendant is aware, the

6  defendant's intent to disrupt or interfere with that contract, actual disruption or interference, and

7  damages. *Local Ad Link, Inc. v. AdzZoo, LLC*, Case No. 2:09-cv-01564, 2009 WL 10694069 *12

8  (D. Nev., December 15, 2009) *citing Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1990). The

9  statute of limitations on an intentional interference with contract claim is three years. NRS

10  11.190(3)(c), *Stalk v. Mushkin*, 199 P.3d 18, 20 (Nev. 1990).

11       Defendant contends that Plaintiffs fail to plead that Defendant's alleged activities actually

12  disrupted their membership agreements with SoundExchange or AARC, do not identify a particular

13  contract provision that was breached or any breach of contract by SoundExchange or AARC, and

14  that Plaintiffs have not alleged that either SoundExchange or AARC failed to pay them royalties.

15  Finally, Defendant contends that Plaintiffs' tortious interference claim is barred by the applicable

16  three year statute of limitation. ECF No. 25 at 4-7.

17       Starting with the three year statute of limitations, Defendant is correct that any claim

18  Plaintiffs had with respect to unpaid royalties or other amounts allegedly received by Defendant

19  more than three years prior to filing their claim on October 10, 2018 is time barred. Plaintiffs clearly

20  knew that Defendant was acting as their agent and knew or should have known they were not

21  receiving quarterly periodic royalty payments from SoundExchange and AARC pursuant to their

22  membership agreements soon after they entered into their membership agreements. ECF No. 23-1

23  ¶ 82. Plaintiffs also knew that other record distributors paid royalties and they received none. *Id.* ¶

24

25  [3]    Plaintiffs claim that Defendant's refusal to sign a mediation agreement apparently sponsored by
   SoundExchange, Defendant is interfering with Plaintiffs' "contractual rights" to receive royalties collected
26  by AARC and SoundExchange. However, Plaintiffs did not attach to their amended complaint a copy of any
   agreement demonstrating that Defendant had contractually agreed to mediation as a pre-litigation resolution
27  process, and they have made no allegation that such an agreement exists. Hence, without the existence of an
   actual or alleged contractual provision requiring mediation, of which Defendant is aware, there can be no
28  claim for tortious or intentional interference with contract, and this portion of Plaintiffs' proposed amended
   complaint fails as a matter of law.

1    61.  Hence, all claims that pertain to Defendant's alleged collection of royalties, which he allegedly

2    did not distribute to Plaintiffs and which occurred prior to October 10, 2015, are time barred.

3          With respect to Plaintiffs failure to adequately plead this claim, Plaintiffs allege that each of

4    them entered into a membership agreement with SoundExchange and AARC; that Defendant was

5    aware of these agreements; that Defendant held himself out as Plaintiffs' agents to both entities; that

6    beginning in 2010 Defendant began collecting royalties from AARC and SoundExchange; that

7    SoundExchange has paid and is holding royalties for CAMEO; that Defendant never paid Plaintiffs

8    their share of AARC or SoundExchange royalties; and, that Defendant is interfering with Plaintiffs'

9    contractual right to receive royalties from SoundExchange and AARC by claiming that he alone is

10   entitled to these royalties.

11         These allegations, at this stage of proceedings, adequately state a claim for tortious

12   interference with contract.  *Local Ad Link, Inc.*, 2009 WL 10694069 *13.

13                          *Plaintiffs' Proposed Breach of Fiduciary Duty*

14         To state a claim for breach of fiduciary duty under Nevada law, Plaintiffs must allege the

15   existence of a fiduciary relationship, a breach of the duty of care by the fiduciary, losses resulting

16   from the fiduciary's breach of duty, causation, and damages.  *Giles v. Gen. Motors Acceptance*

17   *Corp.*, 494 F.3d 865, 880-81 (9th Cir. 2007).  Nevada law, which the parties agree governs this

18   claim, applies a three year statute of limitations to a breach of fiduciary duty claim.

19         Under Nevada law, partners owe other partners and the partnership itself, the fiduciary duty

20   of loyalty, which, among other things, is limited to accounting to the partnership, holding partnership

21   assets as trustee, as well as refraining from being an adverse party, acting on behalf of an adverse

22   party, and competing with the partnership.  NRS 87.4336(1)-(2).  If Plaintiffs have adequately pled

23   the existence of a partnership, Plaintiffs may establish that Defendant owed his partners a fiduciary

24   duty.

25         Plaintiffs allege that in 1982, Defendant, N. Leftenant, and, on information and belief,

26   Jenkins formed AAR as a Georgia corporation.  After AAR was administratively dissolved in June

27   1992, Plaintiffs claim that Plaintiffs N. Leftenant, A. Leftenant, Bright, and Jenkins, together with

28   Defendant, continued to do business as AAR and its DBA names "as a partnership in connection

6

1    with CAMEO's recordings and musical compositions." In contrast to this allegation, Plaintiffs also

2    allege that only Plaintiffs N. Leftenant and Jenkins, together with Defendant continued to do

3    business under AAR and its DBAs as a partnership. Under any circumstance, Plaintiffs never claim

4    that Plaintiff Johnson was part of a partnership with Defendant and for this reason, a partnership

5    relationship cannot be the basis of a breach of fiduciary duty with respect to any claim raised by

6    Johnson.

7         The remaining Plaintiffs describe in generalities that AAR, as a partnership, continued to pay

8    all CAMEO expenses and that Plaintiffs A. Leftenant and Jenkins, along with Defendant, AAR, and

9    Better Days and Better Nights Music, continued as a partnership in connection with CAMEO's

10   recordings and musical compositions. Plaintiffs then make conclusory allegations that Defendant

11   was in a position of trust and confidence.[4] However, merely pleading the existence of a partnership

12   is not sufficient to withstand dismissal of a claim based on such a relationship. *Ely v. Perthuis*, Case

13   No. 12 Civ. 1078, 2013 WL 411348 *6 (January 29, 2018, S.D.N.Y. 2013) (citations omitted).

14        Pursuant to NRS 87.060, "a partnership is an association of two or more persons to carry on

15   as co-owners a business for profit and includes a registered limited-liability partnership." Under

16   NRS 87.870, the Nevada legislature established rules for determining whether a partnership exists.

17   Setting aside exceptions that do not apply, owning common property or part ownership in property

18   does not, itself, establish the existence of a partnership. Likewise, sharing in gross returns

19   irrespective of whether "the persons sharing them have a joint or common right or interest in any

20   property from which the returns are derive" does not create a partnership. The receipt of profits of

21   a business is prima facie evidence that the person is a partner in a business, so long as the profits

22   was not received (a) as a debt by installments or otherwise; (b) as wages of an employee or rent to

23   a landlord; (c) as an annuity to a surviving spouse or representative of a deceased partner; (d) as

24   interest on a loan, though the amount of payment vary with the profits of the business; or (e) as the

25   consideration for the sale of a goodwill of a business or other property by installments or otherwise.

26

27

28   [4]    Plaintiffs' pleading, in paragraph 152 through 156, provides nothing factual to support a partnership
     relationship.

1    In this case, Plaintiffs confusing allegations never plead that they carried on as co-owners of

2    a partnership for profit. Plaintiffs also do not include any joint control or management of CAMEO

3    or AAR, but that only Defendant had these responsibilities. It does appear from Plaintiffs' pleadings

4    that they and Defendant were supposed to equally share in the net returns arising from a common

5    right or interest in royalties to be split as described in paragraph 77, 80, and 81 of the amended

6    complaint. But this alone cannot be enough to establish a partnership under Nevada law. The

7    purchase of the bus and real estate also do not establish the existence of a partnership under Nevada

8    law. *Ely*, 2013 WL 411348 *6. In sum, based on the allegations presented, this Court does not find

9    that Plaintiffs have alleged sufficient facts to establish, even at this state of proceedings, that some

10   of the parties may have formed a partnership, under Nevada law, at some point in time. *Corporate*

11   *Fleet Services v. West Van, Inc.*, Case No. 3:08-cv-413, 2009 WL 753432 *2 (March 18, 2009,

12   W.D.N.C.); *Building 11 Investors LLC v. City of Seattle*, 912 F.Supp. 2d 972, 979-80 (W.D. WA.,

13   2012).

14          Moreover, Plaintiffs allege facts that appear contrary to a finding that any partnership existed.

15   For example, on October 7, 2015, Defendant began a residency in Las Vegas, which Plaintiffs do

16   not state included them or otherwise involved them in any way. While Jenkins is alleged to tour

17   with the band, this allegation does not say anything about doing so as part of a partnership. Further,

18   in 2012, the Plaintiffs allege they attempted to collect royalties directly from SoundExchange despite

19   the supposed partnership and Defendant's role as their agent. No Plaintiff alleges when they,

20   presumably, could not collect from SoundExchange they held a partnership meeting or otherwise

21   pursued their rights for breach of a partnership agreement.

22          As explained by the United States Supreme Court, the plaintiff must articulate "enough facts

23   to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

24   (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

25   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

26   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin

27   to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

28   unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Id.* In conducting

8

1 the above analysis, a court must accept all factual allegations as true even if doubtful in fact.

2 *Twombly*, 550 U.S. at 555. Nevertheless, "the tenet that a court must accept as true all of the

3 allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949.

4 For all of these reasons, as stated above, the Court finds Plaintiffs have failed to plead the plausible

5 existence of a partnership and, as such, no fiduciary obligations flowed from Defendant to any

6 Plaintiff based on such a relationship.

7 The Court also finds no fiduciary duty grows out of the ordinary business relationship

8 between Plaintiffs and Defendant. Defendant was one founding member of the CAMEOs, along

9 with all of the Plaintiffs except Bright. ECF No. 23-1 ¶ 16. But, the totality of the factual allegations

10 suggest Defendant was not in a superior position to Plaintiffs, or more knowledgeable or powerful

11 than they were. In fact, the allegations suggest the opposite; that is, that the parties were in equal

12 positions with equal knowledge and sophistication. ECF No. 23-1 ¶¶ 10-17, 19, 21, 25, 32, 37, 40.

13 There is no allegation that the parties ever discussed or agreed upon Defendant acting in a fiduciary

14 capacity for Plaintiffs. In sum, other than Plaintiffs conclusory allegations regarding Defendant's

15 status, there is nothing to support Defendant's position relative to Plaintiffs as that of a fiduciary.

16 For the above stated reasons, Plaintiffs' second cause of action for Breach of Fiduciary Duty

17 fails as a matter of law.

18 *Plaintiff's Proposed Promissory Estoppel Claim*

19 Plaintiffs next assert promissory estoppel alleging that (i) Defendant was aware that

20 Plaintiffs, as featured members of CAMEO, were entitled to recording artist royalties paid by

21 SoundExchange and AARC; (ii) Defendant promised Plaintiffs they could rely on Defendant to pay

22 them their respective shares of future royalties from CAMEO recordings as well as from

23 SoundExchange and AARC, (iii) they collectively owned the CAMEO name/brand; (iv) Defendant

24 expected Plaintiffs to rely on his promise to pay future royalties and use of the CAMEO brand/mark;

25 (v) Plaintiffs relied on Defendant's promises; and, (vi) Plaintiffs have been damaged in excess of

26 $103,005 in SoundExchange royalties, which is in Defendant's possession.[5]

27

28 ⁵ Plaintiffs also allege that they have been damaged in an amount in excess of this same $103,005.30
for their SoundExchange, AARC, and other unidentified record company royalties.

1    A claim for promissory estoppel requires a plaintiff to plead and ultimately prove that the

2    defendant is apprised of the true facts, must have intended his conduct will be acted upon or act such

3    that the plaintiff has the right to believe defendant so intended; plaintiff must be ignorant of the true

4    facts; and plaintiff relied on the conduct of defendant to his detriment. *Pink v. Busch*, 691 P.2d 456,

5    459 (1984).  As established by Nevada law, and cited by the U.S. District Court for the District of

6    Nevada, promissory estoppel must be pled with specificity in compliance with Fed. R. Civ. P. 9(b).

7    *Hasan v. Ocwen Loan servicing, LLC*, No. 2:10-cv-00476, 2010WL 2757971 *2 (July 12, 2010,

8    D.Nev) (citing several Nevada Supreme Court cases not cited here).  The statute of limitations for

9    this claim is four years.  *Seng v. MTC Financial, Inc.*, 749 Fed. Appx. 657, 658 (9th Cir. 2019).  Any

10   claim by Plaintiffs to damages arising from alleged promissory estoppel older than four years

11   measured backward from the date the original complaint was filed, is time barred.

12        In Plaintiff's third cause of action, Plaintiffs fail to allege that they relied to their detriment

13   with respect to the CAMEO name or brand except to say in a conclusory fashion that they have been

14   "further damaged" by Defendant claiming to be the sole owner of the CAMEO mark.  This

15   conclusory statement, in and of itself, is insufficient to plead the elements of a promissory estoppel

16   claim and, as such, third claim of relief fails as to Plaintiffs' allegations pertaining to the CAMEO

17   name or brand. *Id.* at **1-2.

18        While Plaintiffs state that Defendant "promised" them that Plaintiffs could rely on

19   Defendant's conduct, as producer and administrator of CAMEO, that they would be paid their

20   respective share of royalties, and that Defendant expected Plaintiffs to rely on this representation,

21   Plaintiffs do not allege when, if ever, Defendant knew the true facts – that he had no intention of

22   paying Plaintiffs their share of royalties.  While Plaintiffs say they attempted to collect royalties

23   from SoundExchange in 2012, they provide no date when SoundExchange was supposedly told by

24   Defendant that he promised to pay Plaintiffs their respective shares.  Plaintiffs provide no dates at

25   all with respect to AARC or "other record company royalties."

26        The Court finds that Plaintiffs have pled that they entered into membership agreements with

27   SoundExchange and AARC of which Defendant was aware, that Defendant collected royalties from

28   these companies beginning in 2010 on their behalves as their agent, and that Defendant never paid

1   Plaintiffs their respective share of royalties.  There is no place in the proposed amended complaint,

2   however, that explains when the parties "all agreed" they would share equally in these future

3   royalties.  Plaintiffs also do not state who specifically was part of those who "all agreed."

4          These claims therefore fails as a matter of law because Plaintiffs do not meet the FRCP 9(b)

5   pleading requirements, requiring specificity, depriving the Court of its ability to assess the timeliness

6   of the claims made.  *Hasan v. Ocwen Loan Servicing, LLC*, Case No. 2:10-cv-00476, 2010 WL

7   2757971 *2 (July 12, 2010, D.Nev.)

8          Further, if there were actual "agreements" between the parties, even if such agreements were

9   oral, then Plaintiff must proceed on breach of oral contract and not on a promissory estoppel claim.

10  *Samick Musical Instruments Co., Ltd. v. QRS Music Technologies, Inc.*, Case No. 2:15-cv-00333,

11  2017 WL 3567522 *6 (August 17, 2017, D.Nev.) (citation omitted).  If the promsiee's reliance is

12  "bargained for, the law of consideration applies; and it is only where the reliance was ungargained

13  for that there is room for application of the doctrine of promissory estoppel."  *Walker v. KFC*

14  *Corporation*, 728 F.2d 1215, 1218 (9th Cir. 1984) (citation omitted).  Here, Plaintiffs repeatedly

15  reference agreed upon performances among the parties.  These agreements are the antithesis of a

16  promissory estoppel claim.  As such, and in the absence of the pleading specificity required of this

17  claim, Plaintiff's third cause of action fails as a matter of law.

18                        *Plaintiffs' Declaratory Relief Claims*

19         Plaintiffs remaining claims are all declaratory relief actions.  Declaratory relief actions

20  necessarily presume the existence of a contract.

21         Declaratory relief is a remedy, not a cause of action. *See, e.g.*, *Rodriguez v. Hayes*,
       591 F.3d 1105, 1120 (9th Cir. 2010) (describing "declaratory relief" as "distinct in
22     purpose from and 'milder' in remedy than injunctions"). "Declaratory relief is
       appropriate when (1) the judgment will serve a useful purpose in clarifying and
23     settling the legal relations in issue, and (2) when it will terminate and afford relief
       from the uncertainty, insecurity, and controversy giving rise to the proceeding."
24     *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986). Although Rule 57 of the
       Federal Rule of Civil Procedure states that "the existence of another adequate
25     remedy does not preclude a declaratory judgment," the "availability of other
       adequate remedies may make declaratory relief 'inappropriate.' " *See* Fed. R. Civ.
26     P. 57; *accord Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (affirming
       district court dismissal of declaratory relief claim on the grounds that it was "merely
27     duplicative" of plaintiff's other causes of action).

28

                                      11

*Kalaouaz and Associates S.A.R.L. v. Boardus*, Case No. cv-12-3632, 2012 WL 12886213 *9 (October 30, 2012, C.D.Cal.). There are four elements that must be met before declaratory relief may be granted:

> (1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectable interest; and(4) the issue involved in the controversy must be ripe for judicial determination.

*Guarini v. Cox*, No. 62826, 2016 WL 412824 *2 (Feb. 1, 2016, Nev.) (citation omitted).

Defendant does not move to dismiss Plaintiffs fourth cause of action seeking declaratory judgment that Plaintiffs are entitled to royalties from SoundExchange, AARC and the other record companies. ECF No. 25 at 14. Thus, the Court does not examine this claim at this time.

As to Plaintiffs Fifth and Sixth causes of action, they seek, respectively, declaratory judgment that Plaintiffs are co-owners of the CAMEO's trademark, and that Plaintiffs N. Leftenant and Jenkins are co-owners and/or partners of AAR, Better Days Music and Better Nights Music. With respect to Plaintiffs' sixth cause of action the Court finds, as stated above, that Plaintiffs fail to plead sufficient facts to establish the plausible existence of a partnership regarding the operations of AAR and its DBAs. In fact, Plaintiffs' allegations are solely that AAR operated as a partnership after it was dissolved as a corporation, paid CAMEO bills, and did business in connection with CAMEO's recordings and compositions. These vague assertions assert legal conclusions without sufficient facts to turn a possibility into a reasonable inference. Even at this stage of proceedings, Plaintiffs must provide sufficient facts to establish the existence of a viable claim.

With respect to Plaintiffs' fifth cause of action regarding whether Plaintiffs are "co-owners" of CAMEO's trademark, it is undisputed that Defendant was not the only founding member of CAMEO. Proposed plaintiff Jenkins is expressly alleged to be a founding member of CAMEO, and to have appeared on all 18 of the groups albums. Jenkins is also alleged to have appeared on the February 1, 2019, single released under CAMEO, and being marketed as part of the group. The remainder of the Plaintiffs allege that they have "continued to perform the band's music under the name CAMEO . . . in the years following the release of its last studio album [in 2000]" up to the

1  present.  Plaintiffs also allege that their names and likenesses are still being used to market CAMEO.

2  Finally, Plaintiffs Johnson, N. Leftenant, and A. Leftenant filed a Trademark/Service Mark

3  Application, which further supports these Plaintiffs' claims

4        Defendant argues that well established law demonstrates that when a performer leaves a

5  band, that performer has no claim for ownership in the band name.  However, the facts as to whether

6  any Plaintiff left the band, Plaintiffs allege specific facts to the contrary.  The parties agree on the

7  three step analysis to determine ownership of a mark when there is a dispute over ownership.  Of

8  course, the Court is not asked to decide who among the litigants owns the mark in question, but only

9  whether Plaintiffs have stated a claim for declaratory relief regarding ownership.  The purpose

10 underlying declaratory relief will be served by allowing this claim to go forward as a judgment will

11 clarify and settle the legal relationship of the parties as to the CAMEO mark, and it will terminate

12 and afford relief as to the uncertainty regarding the mark.

13       Accordingly,

14       IT IS HEREBY ORDERED that Plaintiffs' Motion for Leve to Amend the Complaint (ECF

15 No. 22) is GRANTED in part and DENIED in part.

16       IT IS FURTHER ORDERED that the Amended Complaint shall be filed as to the First Cause

17 of Action, Fourth Cause of Action, and Fifth Cause of Action.

18       IT IS FURTHER ORDERED that Tomi Jenkins shall be added as a plaintiff for purposes of

19 the First, Fourth, and Fifth Causes of Action.

20       IT IS FURTHER ORDERED that the remainder of the Motion to Amend is DENIED without

21 prejudice.

22

23       DATED:  September 6, 2019

24

25

26       _____
         ELAYNA J. YOUCHAH
27       UNITED STATES MAGISTRATE JUDGE

28