UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NATHAN LEFTENANT, ARNETT LEFTENANT, JERYL BRIGHT, GREGORY JOHNSON, and THOMAS ("TOMI") JENKINS,<br><br>Plaintiffs,<br><br>v.<br><br>LAWRENCE ("LARRY") BLACKMON,<br><br>Defendant. | Case No. 2:18-cv-01948-EJY<br><br>**ORDER** |
| LAWRENCE ("LARRY") BLACKMON,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>NATHAN LEFTENANT, ARNETT LEFTENANT, JERYL BRIGHT, GREGORY JOHNSON, and THOMAS ("TOMI") JENKINS,<br><br>Counterclaim Defendants. | |

Before the Court is Plaintiffs' Motion to Re-Designate Confidential Documents (ECF Nos. 215 and 217) docketed on July 29, 2020. Defendant filed his Response on August 12, 2020 (ECF No. 228). Plaintiffs filed their Reply on August 19, 2020 (ECF No. 238).

**I.     Relevant Background**

The facts underlying the present Motion are familiar to the parties and the Court. Briefly stated, Defendant is a party to an agreement with Universal Music Group ("UMG"), produced in response to a subpoena served by Plaintiffs, which was originally designated by UMG as "ATTORNEY'S EYES ONLY" pursuant to the terms of the agreed upon Stipulated Protective Order (ECF No. 44). ECF No. 218-1 at 12. Plaintiffs objected to this designation and sought to discuss the re-designation of the agreement with Defendant and UMG. *Id*. at 11-12. UMG initially took the position that the agreement's designation could "be worked out among[] the parties to the case." *Id*. at 11. The parties then agreed upon a "CONFIDENTIAL" designation (*id*. at 10), and when

1

Defendant notified UMG of this new designation, Plaintiffs lodged no objection. *Id*. at 9-10. Months later, Plaintiffs reached out to UMG seeking to re-designate the agreement as non-confidential. *Id.* at 6. On this occasion, UMG stated that the agreement "should remain 'confidential.'" *Id*. at 3. The "CONFIDENTIAL" designation has since controlled how the agreement is disclosed in this action.

Plaintiffs now move the Court to re-designate the agreement as "NON-CONFIDENTIAL." ECF No. 217 at 2. In the alternative, Plaintiffs propose a redacted version of the agreement be designated as "NON-CONFIDENTIAL" so that it may be filed and available to the public. *Id.* at 4. Plaintiffs aver re-designation presents "no identifiable, significant harm to UMG or Defendant Blackmon," and allege the agreement lacks "trade secrets or other confidential research, development, or commercial information" that would otherwise favor confidentiality. *Id.* at 8. Plaintiffs argue that Defendant should be prevented from challenging re-designation because Defendant came to the Court with unclean hands. *Id.* at 7. Plaintiffs state that Defendant willfully failed to produce the agreement during discovery to hide the fact that he "entered into the … [a]greement" on behalf of Plaintiffs.[1] *Id.* Plaintiffs also challenge Defendant's standing to establish the agreement's confidential designation by stating that UMG was the true disclosing party and therefore the entity with the burden of supporting the agreement's confidential designation in the present action. ECF No. 237 at 7.

Defendant counters these arguments by stating the agreement contains "sensitive royalty terms, financial information, … identity of parties, and other sensitive information" that, if unsealed, may disadvantage his business dealings with UMG. ECF No. 228 at 13. Defendant also avers that unsealing the agreement will "place UMG at a significant competitive disadvantage" with respect to its negotiations with other recording artists and create the high probability that Plaintiffs will use the unsealed agreement for "improper purposes." *Id.* at 12.

**II. Discussion**

The Protective Order states that before a Motion to re-designate may be filed, the party challenging the designation must provide "written notice… [identifying] in reasonable detail the

---

[1] The Court notes that it addressed Defendant's failure to produce the agreement at the same time it addressed Plaintiffs' substantially delayed motion asking the Court to sanction Defendant for this failure. The Court found that both parties have engaged in conduct that has delayed this litigation to the detriment of their respective clients.

1 reasons why the information should not be so designated[.]" ECF No. 44 at 6.  Plaintiffs satisfied
2 this condition and therefore properly bring the instant Motion.  ECF No. 216-1.  Nonetheless, the
3 instant Motion is denied for the reasons set forth below.

4       A.     <u>Plaintiffs' "Standing" Argument is Without Merit</u>.

5 Plaintiffs' Article III standing argument fails.  Article III standing addresses whether a party
6 bringing a claim has sufficient connection to and harm from a challenged action to seek redress in a
7 court.  *Rodriguez v. Your First Choice*, *LLC*, 2017 U.S. Dist. LEXIS 177368, at *11 (D. Nev. Oct.
8 25, 2017) ("Under Article III, a plaintiff must have standing to sue … The plaintiff must have (1)
9 suffered an injury in fact, (2) that is fairly traceable to the challenged conduct …, and (3) that is
10 likely to be redressed by a favorable judicial decision.") (quoting *Spokeo*, *Inc*. *v*. *Robins*, 136 S. Ct.
11 1540, 1547 (2016)).  The threshold issue of standing does not apply to the parties at odds in this
12 trademark dispute and whether either may file or oppose a motion regarding the designation of a
13 document as "confidential" or "non-confidential" pursuant to the terms of the Court approved
14 Protective Order.

15 Specifically, UMG, produced the agreement at issue and initially stated that the
16 confidentiality determination should be left to the parties.  UMG later stated that it wanted the
17 agreement to retain a "confidential" designation.  Plaintiffs initially agreed to the "confidential"
18 designation, but now appear unhappy with their decision.  ECF No. 218-1 at 2-6 and 10-12.  Having
19 apparently determined their decision to treat the UMG document as "confidential" was in error,
20 Plaintiffs argue Defendant lacks standing to participate in the designation process because Defendant
21 was not the producing party.  However, if this is true, then logic dictates that Plaintiffs also lacks
22 standing to participate in the designation process because they too were not the producing party.

23 In sum, the Court finds Plaintiffs' standing argument inapplicable to Plaintiffs' Motion and
24 Defendant's Opposition regarding the confidentiality designation of the UMG document at issue.

25       B.     <u>The Ninth Circuit Standard Applicable to Limiting Public Access to Court
26 Documents Supports the Confidentiality Designation of the UMG Agreement</u>.

27 The Ninth Circuit in *Kamakana v. City and Cnty. of Honolulu* held that "[u]nless a particular
28 court record is one traditionally kept secret, a strong presumption in favor of access is the starting

point." 447 F.3d 1172, 1178 (9th Cir. 2006) (internal citations and quotation marks omitted). However, "good cause" outweighs the presumption of public access when the documents at issue may "'become a vehicle for improper purposes,' such as the use of records to … release trade secrets." *In re Elec. Arts, Inc.*, 298 F.App'x 568, 569 (9th Cir. 2008) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). These standards are adopted in the parties' Protective Order, approved by the Court, requiring trade secrets and "other confidential research, development or commercial information" to be filed under seal and withheld from the public. ECF No. 44 at 1-2.

Generally, a trade secret may consist of "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Restatement of Torts* § 757, cmt. b; *accord Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972) (adopting the Restatement's definition and holding that a "detailed plan for the creation, promotion, financing and sale of contracts" constitutes a trade secret); *see also* NRS 600A.030. Information that "plainly" constitutes trade secrets also includes pricing terms, royalty rates, and minimum payment terms. *In re Elec. Arts, Inc.*, 298 F.App'x at 569.

The agreement at issue establishes specific terms and payments, defines the scope of UMG's right to recordings and valuable assets belonging to Defendant, and resolves potential claims against UMG. Paragraph 2 of the agreement that Plaintiffs propose be unsealed, or include in a publicly available redacted version, discusses royalty terms and Defendant's legal obligations as a signatory. ECF No. 216-2 at 3. On its face, therefore, it appears the agreement qualifies as one containing trade secrets. *In re Qualcomm Litig.*, Case No. 3:17-cv-00108-GPC-MDD, 2019 WL 845659, at *1-2 (S.D. Cal. Feb. 21, 2019) (finding "compelling reasons" for sealing where the documents detailed "sensitive financial terms, royalty agreements … and confidential licensing negotiations[,]" and noting that the "good cause" standard is easier to satisfy than the "compelling reasons" standard). Moreover, keeping the agreement sealed would not "cause a crippling blow to … [Plaintiffs'] ability to prove [their] case."[2] *Open Text S.A. v. Box, Inc.*, Case No. 13-CV-04910-JD, 2014 WL 7368594,

---

[2] The parties to the present litigation possess copies of the unredacted agreement as well as the background necessary to interpret the agreement. Further, if this present action goes to trial, the jury will, as a matter of course, be able to view and evaluate sealed exhibits.

at *2 (N.D. Cal. Dec. 26, 2014) (in the dispositive motion context, excluding testimony that could cause a "crippling blow" to the sponsoring party's ability to prove its case counsels against sealing). These facts favor retaining the "confidential" designation sought by UMG and originally agreed to by the parties.

The Court also considers whether there is sufficient danger that the provisions of the UMG agreement may be improperly used to damage or prejudice UMG or the parties to this action. When considering this issue, the Court reviews whether the information in question is stale, not a secret in fact or can be derived from other available sources. *Confeder. Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, 340 F. Supp. 2d 1118, 1123 (D. Or. 2003); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 101 F.R.D. 34, 39-40 (C.D. Cal. 1984). Plaintiffs assert that the terms of the agreement imposed on Defendant are "common practice," that the agreement addresses events that occurred long ago, and Defendant "is highly unlikely to enter into any new agreements with UMG." ECF No. 215 at 8. Plaintiffs' first assertion is not supported by any evidence or citations. With respect to whether the information at issue is stale, the Court finds that, despite the fact that underlying recordings were made many years ago, the agreement at issue is operative, signed only five years ago by parties still tied to the recording industry, and the recordings continue to generate royalties. ECF No. 216-2 at 2. Finally, even if Defendant is unlikely to enter into any new agreements with UMG, re-designation of the operative agreement at issue may affect Defendant's agreements with other industry participants, a result that is at odds with the lengths to which Defendant has gone to maintain the confidential designation of the agreement.

While Defendant fails to substantively explain how unsealing will "place UMG at a significant competitive disadvantage in negotiating with other recording artists," (ECF No. 228 at 12), Defendant does articulate multiple reasons why unsealing will damage his affairs and relationship with UMG. Defendant states, for example, that he signed the agreement on the condition it be kept confidential, and avers unsealing will "damage [his] relationship with UMG and cause difficulty in securing future concessions from UMG in contract[] negotiations" since UMG may avoid offering him terms similar to the agreement "out of concern those terms will be requested by others." *Id*. at 11-12. Further, Defendant's assertion that Plaintiffs are "highly likely" to improperly

use the agreement is not without some merit given Plaintiffs' prior disclosures through Court filings and apparent misunderstanding of the "confidentiality" designation asked for by UMG and agreed to by the parties. ECF Nos. 72, 73, 82, 84, 103, 115, and 179. Finally, the agreement expressly provides that its terms, including those which Plaintiffs seek to unseal, "shall be treated by the parties as strictly confidential." ECF No. 216-2 at 11. The reasonable intent behind this provision is plainly incompatible with re-designation especially considering that the parties and Court can already access the agreement in its entirety. In sum, the totality of the information before the Court militates against designating the agreement as non-confidential.

### III.    ORDER

Accordingly,

IT IS HEREBY ORDERED that Plaintiffs' Motion to Re-Designate Confidential Documents (ECF No. 215 and 217) is DENIED.

IT IS FURTHER ORDERED that the agreement is designated as "confidential" and shall be filed under seal.

IT IS FURTHER ORDERED that portions of any filing with the Court that references terms in the agreement, when publicly filed, shall be redacted to remove those terms from public view. A sealed copy of the filing shall be made simultaneously in which nothing is redacted.

DATED this 17th day of November, 2020

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE