UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NATHAN LEFTENANT, ARNETT LEFTENANT, JERYL BRIGHT, GREGORY JOHNSON, and THOMAS ("TOMI") JENKINS,<br><br>Plaintiffs,<br><br>v.<br><br>LAWRENCE ("LARRY") BLACKMON,<br><br>Defendant. | Case No. 2:18-cv-01948-EJY<br><br>**ORDER** |
| LAWRENCE ("LARRY") BLACKMON,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>NATHAN LEFTENANT, ARNETT LEFTENANT, JERYL BRIGHT, GREGORY JOHNSON, and THOMAS ("TOMI") JENKINS,<br><br>Counterclaim Defendants. | |

Pending before the Court is Plaintiffs' Motion for Leave to Supplement the Expert Report of Tony Morgan (ECF No. 297).[1] The Court has considered Plaintiffs' Motion to Supplement, Defendant's Opposition (ECF No. 302), and Plaintiffs' Reply (ECF No. 304). Also pending is Defendant's Motion and Memorandum to Strike Plaintiffs' Summary Judgment Declarations and Exhibits (ECF No. 278).[2] The Court has considered Defendant's Motion to Strike, Plaintiff's Opposition thereto (ECF No. 294), and Defendant's Reply (ECF No. 296).[3]

---

[1] Plaintiffs' Motion for Leave to Supplement the Expert Report of Tony Morgan (ECF No. 297) is referred to herein as the "Motion to Supplement." Tony Morgan is referred to as "Morgan."

[2] Defendant's Motion and Memorandum to Strike Plaintiffs' Summary Judgment Declarations and Exhibits (ECF No. 278) is referred to herein as "Defendant's Motion to Strike."

[3] Plaintiffs include Nathan Leftenant ("N. Leftenant), Arnett Leftenant ("A. Leftenant"), Jeryl Bright ("Bright"), Gregory Johnson ("Johnson"), and Thomas Jenkins ("Jenkins"). Collectively, N. Leftenant, A. Leftenant, Bright, Johnson, and Jenkins are referred to herein as "Plaintiffs." Defendant is Lawrence Blackmon who is referred to as "Blackmon" or "Defendant."

I.      **Summary of the Motions, Oppositions, and Replies**.

   A.      <u>Plaintiff's Motion to Supplement</u>.

Plaintiffs' Motion to Supplement is one page long and argues that the good cause standard applies to Plaintiffs' supplemental briefing request so long as the supplement will make a substantive difference. ECF No. 297 at 2 *citing Chemeon Surface Tech., Ltd. Liab. Co. v. Metalast Int'l, Inc.*, Case No. 3:15-cv-00294-MMD-CBC, 2019 WL 339626 (D. Nev. Jan. 28, 2019) (internal citation omitted), *amended and superseded by Chemeon Surface Tech. Ltd Liab. Co. v. Metalast Int'l Inc.*, Case No. 3:15-cv-00294-MMD-CBC, 2019 WL 938384 (D. Nev. Feb. 6, 2019). Plaintiffs argue that the supplement includes Morgan's Declaration certifying his expert report, as well as Schedules A through C that are referenced therein. *Id*. Plaintiffs say the Schedules will "solidify Plaintiffs' damages claim made in their Motion for Partial Summary Judgment." *Id*. Plaintiffs also state that "Defendant Blackmon will not be harmed as the complete Expert Report was served on him through counsel on October 22, 2019." *Id*. Plaintiffs cite to a declaration of Plaintiffs' Counsel allegedly filed on September 20, 2021, and referenced as Exhibit B; however, there is no declaration by Plaintiffs' Counsel filed on September 20, 2021 recorded on the docket either together with or separate from the Motion to Supplement. Morgan's Declaration states he created his report based on Schedule A "provided by SoundExchange," Schedule B provided by Plaintiffs' Counsel; and Schedule C representing a "calculation from Schedules A and B identifying the amount each claimant is entitled to." ECF No. 297-1 at 2.

The Opposition to Plaintiffs' Motion to Supplement provides some background regarding the Morgan report including that the report was first submitted in July 2021, unsworn, without a Declaration from Morgan, and missing Schedules A through C. ECF No. 302 at 2. Defendant contends Plaintiffs were dilatory when seeking to supplement Morgan's report because in "the [s]pring of 2020" Plaintiffs filed an opposition to Defendant's then-filed motion for summary judgment[4] attaching the same "unsworn report" with the same failure to include the Schedules. ECF No. 302 at 4. Defendant challenged the admissibility of the report at that time based on the missing Schedules and failure to swear to its content. *Id*. at 5. Here, despite the previous error and prior

---

[4]    Briefing was vacated by the Court because of amended pleadings.

motion to strike, Plaintiffs again filed Morgan's unsworn report without the Schedules. Defendant further points out that despite moving to strike Morgan's report on August 25, 2021 (ECF No. 278), Plaintiffs did not seek to repair the errors until they filed the Motion to Supplement almost a month later on September 20, 2021 (ECF No. 297). Even then, the Motion to Supplement and the attached Morgan Declaration did not cure all deficiencies alleged by Defendant. ECF No. 302 at 5.

With respect to the substance of Morgan's report, Defendant argues it fails to meet the standard under Fed. R. Evid. 702. Specifically, Defendant argues (1) Morgan did not follow his stated methods for the calculations that appear on Schedule C resulting in flawed calculations, (2) Plaintiffs assert a new damages claim based on a quarterly occurrence theory applicable to their tortious interference with contract claim, but Morgan did not calculate the amount of damages on a quarterly basis, and (3) Morgan's calculations are based on incomplete data. *Id.* at 7-9.[5]

Unlike their moving papers, Plaintiffs' Reply in Support of the Motion to Supplement attempts to explain the failure to include Schedules A through C as inadvertent, claims Plaintiffs were diligent in seeking to supplement the report, submitted a declaration by Morgan that allegedly establishes the authenticity of the Schedules, and contends the Supplement makes a substantive difference stating the conclusion that the Schedules "will solidify Plaintiffs' damages claim." ECF No. 304 at 3.

  B. <u>Defendant's Motion to Strike</u>.

Defendant's Motion to Strike (ECF No. 278) asks the Court to strike from the record the following: (i) paragraphs 19, 20, and 43 of N. Leftenant's Declaration; (ii) Exhibits B and H to N. Leftenant's Declaration; (iii) Jenkins' Declaration paragraphs 17 and 18; (iv) Exhibit B to Jenkins' Declaration; (v) Exhibits C and M from the Rosario Declaration; and, (vi) paragraph 4, together with Schedules A through C, attached to Morgan's Declaration. Relying on various sections of Fed. R. Civ. P. 56 and case law interpreting the same, Defendant argues that Exhibit B to N. Leftenant and Jenkins' Declarations is unauthenticated and without authorship. Defendant argues N. Leftenant's averments in paragraphs 19 and 20 of his Declaration, and Jenkins' averments in paragraph 18 of

---

[5] On August 25, 2021, Defendant filed a Motion to Strike the Morgan Report, which argues FRE 702 violations as well. ECF No. 294. That Motion is discussed below.

1  his Declaration, refer to or rely on the unauthenticated Exhibit B and, therefore, must also be struck.
2  Defendant contends Jenkins' Declaration paragraph 17 is unsupported by "record evidence" and
3  must be struck for lack of foundation.

4        N. Leftenant's paragraph 43 and Exhibit H pertain to a "survey" he hired some unidentified
5  individual to conduct on Facebook. The survey is unaccompanied by any indication of the
6  methodology used to gather data or analyze results. There is no information offered regarding how
7  the survey was designed, the qualifications of the person conducting the survey, how many people
8  responded to the survey, or any other indicia of reliability regarding Exhibit H or provided by N.
9  Leftenant.

10        Exhibit C to the Rosario Declaration is a series of SoundExchange agreements.[6] Defendant
11  states (albeit supported by a blank declaration cite) that Bright's Agreement was first produced on
12  July 15, 2021 precluding Defendant from being able to conduct any discovery arising from or related
13  to the Agreement. ECF No. 278 at 8 *but see* ECF No. 278-1 at 4 (an email from Plaintiffs to
14  Defendant dated July 15, 2021 attaching the Bright Agreement). Defendant also argues that the
15  Bright Agreement was not produced by SoundExchange in response to a subpoena (ECF No. 296 at
16  4).

17        Plaintiffs argue that Bright's Agreement was produced by SoundExchange in response to a
18  subpoena, but provides nothing to support this assertion. ECF No. 294 at 5. However, the cites
19  provided by Plaintiffs are to the Rosario Declaration attached to the response at paragraph 3 and
20  Exhibit B thereto. Paragraph 3 of Rosario's Declaration says nothing about a subpoena issued to or
21  answered by SoundExchange and Exhibit B is Defendant's document requests—not responses—to
22  Bright, which provide no support for the assertion that SoundExchange responded to a subpoena.
23  *See* ECF No. 294-1 ¶ 3 referencing Exhibit B thereto. The Bright deposition testimony to which
24  Plaintiffs cite (*id*. at 36-41) is far from the model of clarity. For sake of completeness, the Court
25  also looked at Exhibit C to the Rosario Declaration attached to Plaintiffs' Motion for Summary
26  Judgment (ECF No. 273-1 at 93), which includes an email dated November 2012 sent by someone

---

[6] Exhibit C includes Johnson's SoundExchange Registration, N. Leftnenant's Registration for Performance Royalties, A. Leftenant's SoundExchange Registration, and the Bright Agreement. Defendant seeks to strike only the Bright Agreement. ECF No. 278 at 8.

in SoundExchange Customer Care to "Document Assurance" pertaining to Bright's registration indicating the registration was received on November 5, 2010. However, this Exhibit says nothing about whether the Bright Agreement was ever produced to Defendant, let alone timely produced to Defendant.

Finally, Defendant argues that the Morgan's report (Exhibit M to the Rosario Declaration) is unreliable, unsworn, and incomplete. Defendant reiterates that the Declaration offered with Plaintiffs' Motion to Supplement did not verify the report and attaches a new spreadsheet created based on Morgan's October 22, 2019 report. Defendant adds that because the parties settled and dismissed Count IV of Plaintiffs' Third Amended Complaint, in which Plaintiffs sought a pro rata share of royalties from SoundExchange and AARC, Morgan's calculations are irrelevant. ECF No. 278 at 11.

**II.    Discussion**

The 2010 amendments to Rule 56 "eliminate[d] the unequivocal requirement that evidence must be admissible in its present *form* in order to be considered at summary judgment. Instead, the rule mandates that the *substance* of the proffered evidence be admissible at trial." *Nannis v. SB Gaming, LLC*, Case No. 2:19-cv-01894-JAD-NJK, 2022 WL 257100, at *3 (D. Nev. Jan. 27, 2022) *citing Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished) (internal quote marks eliminated) (emphasis in original). "In a motion for summary judgment it is sufficient if the substance of the evidence is admissible even if inadmissible in its current form, if the requirements of Rule 56 are met." *Madden, Inc. v. Allied Ins. Co. of America*, Case No. 2:13-cv-827-KJD-NJK, 2014 WL 6908477, at *1 (D. Nev. Dec. 9, 2014) *citing Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001). To this end, "it is well-settled law that documentary evidence must be authenticated in order to be properly considered. *Id*. *citing Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). Nonetheless, at summary judgment, the Court does not focus on the admissibility of the evidence; instead, the Court's focus is on the admissibility of the contents. *Fraser*, 342 F.3d at 1036.

A. **Exhibit B to Jenkins and N. Leftenant's Declarations and Paragraphs Relying Thereon**.

Exhibit B to the Jenkins and N. Leftenant Declarations is not authenticated. There is no indication of its source or that it accurately reflects reliable information. N. Leftenant's statements regarding this Exhibit include:

> Between 2009 and 2012, I only collected $16,195.52 for my representative share of SoundExchange artist royalties. I am unaware for whom Baby Buddha's House LLC was collecting SoundExchange royalties, but they only collected $0.08.

and

> Between 2010 and 2014 Lawrence Blackmon through Seven Group Entertainment collected $103,005.38 in CAMEO artist royalties.

ECF No. 273-2 ¶¶ 19, 20. N. Leftenant does not explain who or what Baby Buddha's House LLC is or how, if at all, it plays any role in this case. There is also no explanation or description of who or what Seven Group Entertainment is. Jenkins' Declaration offers similarly cryptic information in paragraph 18: "I was unaware that David Pullman/Aquitaine was collecting my SoundExchange royalties. Pullman/Acquitaine only collected $105.38 before I stopped him." ECF No. 273-3 ¶ 18. Plaintiffs offer the Court no help in their Opposition to Defendant's Motion to Strike stating in conclusory form that N. Leftenant "lays the foundation for statements in [p]aragraphs 19 and 20 in [p]aragraph 18 by stating" he "joined SoundExchange to collect my pro rata share of CAMEO artist royalties." ECF No. 294 at 3. This statement does not authenticate Exhibit B or demonstrate it will be admissible at trial once authenticated. *Id*. at 5.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). However, "an inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 776 and 784, n.7 (9th Cir. 2002) ("[a]uthentication is a special aspect of relevancy concerned with establishing the genuineness of evidence") (internal citations omitted).

The first sentence of paragraph 19 of N. Leftenant's declaration is a statement of personal knowledge and the request to strike this sentence is denied. However, the second sentence of N.

Leftenant's Declaration paragraph 19 and the entirety of paragraph 20 rely on Exhibit B. Likewise, Jenkins' Declaration paragraph 18 is a statement entirely dependent on the content of Exhibit B. The authenticity of Exhibit B has not been established by Plaintiffs. The relevancy of the statements dependent on Exhibit B is not challenged or argued by either party, but is nonetheless unclear to the Court. A review of Exhibit B suggests it may be a business record, a record created by one of the parties or a record created by counsel.

Despite the concerns above, the Court finds Exhibit B to the Declarations of Jenkins and N. Leftenant is capable of authentication as a business record through a thorough presentation of information required by Federal Rules of Evidence 803(6), 901, or some other evidence. Given that authentication at trial is possible, the Court declines to strike Exhibit B and the declaration paragraphs relying on the Exhibit at this time. However, Exhibit B and testimony related to its content is subject to being struck at trial for lacking authentication and reliability, as well as because it is hearsay. Any testimony relying on Exhibit B may also be struck if the Exhibit it struck.

B.    <u>N. Leftenant's Exhibit H and Paragraph 43 of his Declaration</u>.

Unlike the discussion above there are no indicia of potential admissibility attached to Exhibit H or N. Leftenant's statements related thereto. N. Leftenant does not state who conducted the survey that appears in Exhibit H, offers no qualifications of the person who conducted the survey, fails to state when the survey was conducted, why the survey was conducted, how the survey was conducted, how many individuals participated in the survey or how those who participated in the survey were selected. The only information offered is that the survey was conducted on Facebook. While Plaintiffs argue Exhibit H is not offered as expert evidence or opinion, it is unclear for what purpose Exhibit H is offered.

The Court also rejects the argument that Exhibit H is a business record. To overcome the hearsay objection based on the business record exception, a party must demonstrate that: "(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or

another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." FRE 803(6). The Court finds none of these conditions are satisfied and that nothing Plaintiffs offer suggests that these conditions are capable of being satisfied at trial. The reliability of Exhibit H is far too questionable to conclude it is potentially admissible. Thus, the Court grants Defendant's Motion to Strike Exhibit H to N. Leftenant's Declaration and paragraph 43 reliant thereon.

         C.     <u>Jenkins' Declaration Paragraph 17</u>.

Jenkins' statement that he joined SoundExchange in 2008 and "registered again in 2013," which appear in paragraph 17 of Jenkins' Declaration, are statements of personal knowledge the reliability of which may be challenged at trial on cross examination. Defendant's Motion to Strike this declaration paragraph is denied.

         D.     <u>Rosario Declaration Exhibit C</u>.

As discussed above, the documents in Exhibit C contain registration and member artist agreements for Plaintiffs other than Bright. It is only Bright's registration information that is challenged by Defendant. ECF No. 294 at 5. Defendant argues that Bright's SoundExchange documents (ECF No. 273-1 at 106-109) was not produced during discovery, was not provided by SoundExchange in response to a subpoena, was not available at the time Bright's deposition was taken, and was not produced at any time during the discovery period. Defendant argues that under Fed. R. Civ. P. 37(c)(1) the document cannot be used at trial unless there is demonstration of substantial justification or harmlessness. ECF No. 278 at 4. Defendant correctly states that it is Plaintiffs' burden to demonstrate the failure to disclose was harmless or substantially justified. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

Plaintiffs allege that the Bright Agreement with SoundExchange was served on Defendant, but Plaintiffs do not say when this occurred. Further, the document requests propounded by Defendant on Bright offers nothing to suggest, let alone prove, the Agreement was timely produced. *See* Rosario Dec. ¶ 3, Exhibit B to ECF No. 294. The fact that document requests and interrogatories were served during the discovery period, without any evidence that the Bright Agreement was

provided in response to those requests, does nothing to support Plaintiffs' argument. In fact, what evidence there is, is to the contrary. *Compare* ECF No. 294-1 at 20 (Exhibit B) showing a certificate of service dated May 31, 2019 *and* ECF No. 278-1 at 4 showing production on July 15, 2021.

Moreover, when questioned at deposition, Bright had limited recollection of any contacts with SoundExchange regarding his association with CAMEO. ECF No. 294-1 at 36-41. Without a copy of the Bright Agreement to show Bright at deposition, Defendant was limited in his ability to question Bright about the alleged interference with that Agreement. Defendant argues that the existence of the Agreement is "critical to … Bright's tortious interference claim and … Blackmon's defenses thereto." ECF No. 278 at 8. In fact, Defendant points out that he moved for summary judgment of Bright's tortious interference claim in 2020 in part because Bright did not have an agreement with SoundExchange and that the Agreement was not produced in response to that Motion. *Id*. at 9.

Plaintiffs contend that "Bright only recently discovered his Membership Agreement and[,] once discovered[,] it was promptly sent to defendant as supplemental discovery before Summary Judgment Motions were submitted." ECF No. 294 at 6. This argument attempts to establish substantial justification. Nonetheless, Plaintiffs do not explain how or why the Agreement was only recently discovered or why it would not have been produced by SoundExchange in response to a timely served subpoena. In sum, while Exhibit C pages 106 through 109 may ultimately be admissible because it can be authenticated as a business record, and the failure to produce the document at any time during more than three years of litigation could, at least potentially, be justified, neither of these curative effects answer the question of whether the late production is harmless.

In determining if a belated disclosure was harmless, courts consider "whether there will be a need to reopen discovery or change the trial date, whether there is unfair surprise, or whether the opposing party will be subject to unnecessary expenditure." *Duarte Nursery, Inc. v. United States Corps of Engineers*, Case No. 2:13-cv-02095-KJM-DB, 2017 WL 3453206, at *7 (C.D. Cal. Aug. 11, 2016) (internal citation omitted). In his Motion, Defendant does not contend he will need to reopen discovery or that he will be subject to unnecessary expenditure. But Defendant does argue

9

unfair surprise. Given the amount of time Jenkins had to produce this document, key to Jenkins' tortious interference with contract claim, the belated production is of grave concern. Indeed, the burden is on Bright "to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless," which Bright has not done. *Yeti by Molly*, 259 F.3d at 1107.

Bright has not established, let alone argued harmlessness as a result of his very belated production. And, the Court finds the late production is not harmless. Accordingly, the Court grants Defendant's Motion to Strike Exhibit C, at 106-109, to the Rosario Declaration.[7]

E.   Morgan Declaration Paragraph 4 and Spreadsheets A through C.

Defendant argues that the Morgan report must be struck, along with the Schedules Plaintiffs seek leave to introduce through their Motion to Supplement, because the report and information in the Schedules "is based on insufficient and incomplete facts, … is unsworn, and … is incomplete …." ECF No. 278 at 9. Plaintiffs' Opposition responds to none of these concerns except to state the expert report is sufficiently sworn. ECF No. 294 at 6. However, even if Plaintiffs had failed to produce a sworn version of Morgan's report this does not prevent admissibility at trial. *See Tamares Las Vegas Prop., LLC v. Travelers Indemnity Co.*, 409 F. Supp. 3d 924, 944-945 (D. Nev. 2019) (considering a plaintiff's unsworn expert reports at summary judgment because experts would testify at trial as to the reports' conclusions); *see also Campos v. Costco Wholesale Corp.*, Case No. CV 18-2043-MWF, 2018 WL 7348846, at *2 (C.D. Cal. Dec. 21, 2018). Thus, this is not a basis to strike the report and Schedules.

With respect to the timeliness of Defendant's Motion to Strike, raised by Plaintiffs in their Reply in Support of their Motion to Supplement (ECF No. 304 at 4), this is rejected as motions to strike an expert are often filed as motions in limine, which, in the District of Nevada are not due until 30 days before trial. LR 16-3. The Court's focus is the arguments regarding incomplete and insufficient facts that the Court interprets as challenges to the reliability of the report.

---

[7] The Court has reviewed Exhibit L to the Rosario Declaration attached to Plaintiffs' Motion for Summary Judgment. ECF No. 273-1 at 198-209. While this exhibit includes a claim by Bright to certain royalties, the documents in Exhibit L do not establish that Bright had an agreement with SoundExchange. Plaintiffs' Motion for Summary Judgment also avers many alleged agreements among the parties that include Bright receiving royalties based on CAMEO sound recordings, but these averments do not evidence an agreement between Bright and SoundExchange that was produced in this litigation. *See*, for example, ECF No. 306 ¶¶ 8, 21, 33, 45.

Admissibility of expert testimony in a civil proceeding is governed by Fed. R. Evid. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; **(b)** the testimony is based on sufficient facts or data; **(c)** the testimony is the product of reliable principles and methods; and **(d)** the expert has reliably applied the principles and methods to the facts of the case.

In *Barabin v. Asent Johnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), the Ninth Circuit explains that "[w]e have interpreted Rule 702 to require that expert testimony … be both relevant and reliable." (Internal citations and quote marks omitted.) Relevancy, as stated by the court, requires "the evidence … logically advance a material aspect of the party's case." *Id*. (Citation omitted.) Reliability encompasses "whether an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Id. citing Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). "[E]videntiary reliability is based upon scientific validity." *Id. citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590, n.9 (1993). The role of the Court, however, is not to determine the "correctness of the expert's conclusions but the soundness of his methodology." *Id. citing Primiano v. Cook*, 598, F.3d 558, 564 (9th Cir. 2010).

When considering reliability, a flexible concept, the U.S. Supreme Court suggests several factors for the Court to consider, including: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir.2000) (citing *Daubert,* 509 U.S. at 592–94). But, whether these specific factors are "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Barabin*, 740 F.3d at 463 *citing Kumho Tire*, 526 U.S. at 153. As explained in *Barabin*, "Rule 702 clearly contemplates *some* degree of regulation of the subjects and theories about which an expert may testify." *Id.* at 464 *citing Daubert*, 509 U.S. at 589.

The Court must also be cognizant of its overall role as gatekeeper, an active and important role when examining "all forms of expert testimony, not just scientific testimony." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citation omitted). As explained in *Hangarter*, the Ninth Circuit "require[s] a district court to make some kind of reliability determination to fulfill its gatekeeping function." *Id.* at 1018 *citing Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 (9th Cir. 2002) *overruled, in part, on other grounds*, *Barabin*, 740 F.3d at 467. The Court's gatekeeping obligation to admit only expert testimony that is reliable and relevant is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar*, 299 F.3d at 1063–64. Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564 *citing Daubert*, 509 at 588.

The Court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). "[T]he judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Hardeman v. Monsanto Company*, 997 F.3d 941, 962 (9th Cir. 2021) *citing Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 267 (2nd Cir. 2002) (quoting *In re Paoli*, 35 F.3d 717, 746 (3rd Cir. 1994)). *See also Amos v. Makita U.S.A.*, Case No. 2:09-cv-01304-GMN-RJJ, 2011 WL 43092, at *4 (D. Nev. Jan. 6, 2011), in which the court explained that "[a] party is not harmed where, even though an expert disclosure fails to satisfy Fed. R. Civ. P. 26, the party knew about the expert, knew about the content of the expert's testimony, and had an opportunity to depose the expert." (Internal citations omitted.)

Here, Defendant points out methodology problems as well as that certain individuals who made claims for CAMEO royalties are not included in Morgan's calculations. These issues identify the very shaky nature of the opinions offered; however, Defendant knew about Morgan, received his report months before summary judgment briefing was due, and had the opportunity to depose him. The fact that Morgan does not use a quarterly basis for quantifying damages is not a death knell to admissibility; albeit Morgan may be easily challenged on cross examination regarding why he did

not do so.  Likewise, Morgan's failure to accurately reflect to whom royalties may be due goes to the weight of the evidence not admissibility.  In sum, Morgan's report is not unreliable nonsense; rather it is a report that may be easily impeached.

Defendant further argues that the Morgan report is now irrelevant because the parties have settled the portion of Plaintiffs' claim in which Plaintiffs sought a pro rata share of royalties.  ECF No. 287 at 11.  The claim settled by the parties was Plaintiffs' Fourth Cause of Action alleging, in pertinent part, that "Plaintiffs and Defendant … are featured artists of CAMEO who are entitled to receive and collect a ***pro rata*** share of featured artist royalties from SoundExchange, AARC and UMG for the CAMEO recordings on a master by master basis as indicated on **Exhibit A**."  ECF No. 252 ¶ 110 (emphasis in the original); *see also* ECF No. 269.  The Stipulation to Dismiss is expressly limited to the Fourth Cause of Action using the word "solely" when addressing what is released.  ECF No. 269 at 2.  Nonetheless, Plaintiffs do not respond to Defendant's relevancy argument in their Opposition to Defendant's Motion to Strike.  ECF No. 294 at 6.  In their Reply in Support of the Motion to Supplement, Plaintiffs contend that Morgan's report will make a substantive difference because "the question of *pro rata shares* is the basis of Plaintiffs['] claims and is the ultimate legal question before the Court …."  ECF No. 304 at 4.  Plaintiffs further argue that the "quarterly breakdown of damages … is merely a possible reduction to Plaintiffs' potential damage award" and may be relevant to Plaintiffs' claim to interest.  *Id*.  Plaintiffs contend that their tortious interference with contract claim survives the settlement and survives arguments made by Defendant seeking judgment in his favor on this claim.  *See* ECF No. 298.

After considering all the arguments and information discussed above, the Court finds that the Morgan report is not nonsense and, thus, so unreliable as to render it inadmissible.  While summary judgment may render the report irrelevant, that is not before the Court in the present Motions.  As such, the Court reserves its decision regarding admissibility of the Morgan report until summary judgment is decided.

**III.    Order**

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Leave to Supplement the Expert Report of Tony Morgan (ECF No. 297) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion and Memorandum to Strike Plaintiffs' Summary Judgment Declarations and Exhibits (ECF No. 278) is GRANTED in part and DENIED in part as stated above.

Dated this 4th day of February, 2022.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE