UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NATHAN LEFTENANT, ARNETT LEFTENANT, JERYL BRIGHT, GREGORY JOHNSON, and THOMAS ("TOMI") JENKINS, | Case No. 2:18-cv-01948-EJY |
| Plaintiffs, | **ORDER** |
| v. | |
| LAWRENCE ("LARRY") BLACKMON, | |
| Defendant. | |
| LAWRENCE ("LARRY") BLACKMON, | |
| Counterclaim Plaintiff, | |
| v. | |
| NATHAN LEFTENANT, ARNETT LEFTENANT, JERYL BRIGHT, GREGORY JOHNSON, and THOMAS ("TOMI") JENKINS, | |
| Counterclaim Defendants. | |

Pending before the Court is Defendant Lawrence Blackmon's Motion for Reconsideration. ECF No. 337. The Court considered the Motion, Opposition, and Reply. Because the parties and the Court are thoroughly familiar with the facts and procedural background of the case, neither is repeated here.

**I.    Introduction**.

Blackmon's Motion starts with a list of seven errors the Court allegedly made in its Order deciding cross motions for summary judgment (ECF No. 328). ECF No. 337 at 2-3.[1] The substance of the Motion begins with an argument regarding laches. *Id*. at 3. That is where the Court will begin. However, before doing so, the Court notes it has no obligation to try to ferret out each argument not clearly made in Blackmon's instant Motion. *See F.T.C. v. Ideal Financial Solutions,*

---

[1]    Blackmon does not mention or discuss the legal standard for reconsideration in his Motion. ECF No. 337. He first does so in his Reply brief at ECF No. 351.

*Inc.*, Case No. 2:13-cv-00143-JAD-GWF, 2015 WL 4032103, at *2 (D. Nev. June 30, 2015) ("The court is not required to 'paw over files without the assistance from the parties' in order to evaluate their contentions.") (internal citations omitted); *Jacobs v. Wheaton Van Lines Incorporated*, *et al.*, Case No. CV-20-1752-PHX-DLR, 2021 WL 6899131, at *1 (D. Ariz. Feb. 23, 2021) (quoting *Defenders of Wildlife v. Browner*, 909 F.Supp. 1342, 1351 (D. Ariz. 1995) (denying a motion for reconsideration when the movant fails to comply with the rule requiring the movant to "point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought ….").  Hence, the Court addresses only those arguments it finds clearly raised by Blackmon.[2]

## II.   Blackmon's Laches Argument.

Blackmon complains that the Court erred in applying the principle of laches to find in favor of Plaintiffs and against Blackmon on Blackmon's Counterclaim Count III (under Section 43(a) of the Lanham Act) and Counterclaim Count IV (under common law) pertaining to live performances.[3] ECF No. 337 at 4-5.  To support his claim of error, Blackmon contends N. Leftenant did not demonstrate prejudice arising from Blackmon's delayed filing.  *Id.*  Blackmon further contends Plaintiffs, generally, were willful infringers who did not demonstrate Blackmon was or should have been aware of the ORIGINAL CAMEO FAMILY Facebook page prior to 2016, and that it was reasonable for him to "not immediately file suit."  *Id.*

---

[2]    For example, Blackmon lists the Nevada Trade Practices Act (his Counterclaim Count V) as the sixth decision with which he takes issue; however, Blackmon fails to discuss this alleged error in the body of the Motion.  *Compare* ECF No. 337 at 3:6-8 *and* 337 generally.

[3]    The Court denied summary judgment on Blackmon's Counterclaims Counts III and IV, arising from sound recordings, asserted against Jeryl Bright ("Bright"), Gregory Johnson ("Johnson"), Arnett Leftenant ("A. Leftenant"), and Nathan Leftenant ("N. Leftenant").  ECF No. 328 at 32.  The Court found material questions of fact precluding a determination by the Court arising under factors established in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  Blackmon raised the *Sleekcraft* factors in his Motion for Summary Judgment (ECF No. 276-1 at 27).  Neither party argued the *Sleekcraft* factors in addressing the summary judgment motion brought by Plaintiffs.  *See* ECF Nos. 306 (Plaintiffs' Motion for Summary Judgment); 284 (Blackmon's Response to Plaintiffs' Motion).  This decision is not revisited as Blackmon presents no intervening change in law or other basis warranting reconsideration of the Court's decision other than to reargue already considered facts.  The Court's findings as to Tomi Jenkins ("Jenkins"), to the extent reconsidered, is discussed below.  The Court notes that, as stated in the original decision (ECF No. 328), Plaintiffs filed their summary judgment motion multiple times (ECF Nos. 273, 274, 306).  For consistency purposes, the Court cites to ECF No. 306, and exhibits attached to ECF No. 273.

1

a.   <u>Blackmon's new argument under *Pinkette* and *E-sys*</u>.

2

Blackmon argues that the Court failed to "weigh the delay with resulting prejudice to

3

determine whether and to what extent laches bars the requested relief" that included an injunction

4

request.  ECF No. 337 at 5.[4]  Blackmon cites *Pinkette Clothing, Inc. v. Cosmetic Warriors Limited*,

5

894 F.3d 1015 (9th Cir. 2018), to support his conclusion that "the Court committed clear error"

6

based on this failure.

7

In *Pinkette*, Cosmetic Warriors Limited ("Cosmetic Warriors" or "CWL") sought a

8

permanent injunction restraining Pinkette from infringing on Cosmetic Warriors' "LUSH" mark.  *Id*.

9

at 1018.  The Ninth Circuit explained that its decision addressed "what effect" two prior U.S.

10

Supreme Court decision "had on applying laches to a trademark cancellation claim."  *Id*.  The court

11

cited these prior decisions finding that "laches could not bar a copyright infringement claim brought

12

within the Copyright Act's three-year statute of limitations," and "could not bar a patent

13

infringement claim brought with the Patent Act's six-year statute of limitations."  *Id*. (Internal

14

citations omitted.)  The court concluded the "concern over laches overriding a statute of limitations

15

… does not apply … [to trademarks because] the Lanham Act has no statute of limitations and

16

expressly makes laches a defense to cancellation."  *Id*.

17

Noting the validity presumption before five years, and incontestability of registered marks

18

after five years, the court stated that equitable principles of laches (among other equitable defenses)

19

may still be considered and applied to claims over the rights to a mark.  *Id*. at 1021 (internal citation

20

omitted).  However, the court noted that CWL did *not* argue the Supreme Court decisions precluded

21

the application of laches to its trademark infringement claim because the Lanham Act has no statute

22

of limitations applicable to such a claim, but instead argued that laches precluded only a cancellation

23

claim filed before the mark at issue was incontestable.  *Id* at 1022-23.  The court rejected CWL's

24

argument finding that laches may be a defense to trademark cancellation claims as well as trademark

25

infringement claims.  *Id*. at 1023-24.

26

27

28

---

[4]        The entirety of this argument is found in three sentences at ECF No. 337 at 5:10-16.

The court next analyzed the laches defense through a two step process. *Id*. at 1025. The first step requires the court to assess "delay by looking to whether the most analogous state statute of limitations has expired." *Id*. If the applicable statute of limitation "expired before suit was filed, there is a strong presumption in favor of laches." *Id*. In this case, there is no dispute that the applicable four year statute of limitation expired before Blackmon filed Counterclaim Count III under Section 43(a) of the Lanham Act and Counterclaim Count IV under the common law. ECF No. 306 at 39 *citing* NRS 11.190(2)(d); ECF No. 284 at 42.

The second step assesses equity using six factors established in the Ninth Circuit case of *E-Sys, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983),[5] which is Blackmon's focus on reconsideration. However, neither the decision in *Pinkette* nor the decision in *E-sys* represents an intervening change in the law. Neither of these cases, nor the factors discussed therein were mentioned, let alone argued, by Blackmon in his Motion for Summary Judgment or Opposition to Plaintiffs' Motion for Summary Judgment. ECF Nos. 276-1; 284. Blackmon offers no reason for the Court to consider these factors and his argument for the first time on reconsideration. Accordingly, Blackmon's Motion for Reconsideration seeking application of *Pinkette* or the *E-Sys* factors is denied.

      b.    <u>N. Leftenant, Prejudice, and CAMEO's Live Performance mark</u>.[6]

Blackmon admits that his arguments regarding N. Leftenant's alleged failure to demonstrate prejudice in support of a laches defense were made at the time of original motion practice, but contends the same were not addressed by the Court in its decision. ECF No. 337 at 4. Blackmon does not argue there is newly discovered evidence, that the Court's failure resulted in a decision that is manifestly unjust or that there was some intervening change in controlling law. Rather, Blackmon reiterates that N. Leftenant did not submit "actual evidence of prejudice," thus leading the Court to erroneously find in favor of N. Leftenant based on an application of laches. *Id*. *citing* ECF Nos. 284

---

[5]      These factors include: "(1) strength and value of trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) harm to senior user if relief denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by junior user because of senior user's delay." *Id*. (internal citations and quote marks omitted).

[6]      With respect to Blackmon's Counterclaims Counts III and IV asserted against Bright, Johnson, and A. Leftenant,

(Blackmon's Opposition to Plaintiffs' Motion for Summary Judgment) at 39-41.   Blackmon's statement that the Court's decision is in error is not, in and of itself, a basis for reconsideration. *Igbinovia v. Cox*, Case No. 3:11-cv-00079-ECR-WGC, 2012 WL 1716255, at *2 (D. Nev. May 14, 2012) (internal citation omitted) ("A motion for reconsideration is a not a vehicle to reargue a previous motion, and a party seeking reconsideration must show more than a disagreement with the Court's prior decision.").

Reconsideration is appropriate only "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (internal citation omitted).   Motions to reconsider are generally left to the discretion of the trial court.   *Downing v. Nevada*, Case No. 2:11-cv-02024-JCM-VCF, 2012 WL 1298330, at *1 (D. Nev. Apr. 13, 2012) (citing *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C. Cir. 1987)).   A motion for reconsideration must set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. U.S.*, 256 F.Supp.2d 1180, 1183 (D. Nev. 2003) (citing *All Haw. Tours Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648-49 (D. Haw. 1987), *rev'd on other grounds*, 855 F.2d 860 (1988)).

The Court found the presumption of laches properly applied to Blackmon's claim arising from live performances as Blackmon knew of N. Leftenant's performances in the ORIGINAL CAMEO FAMILY no later than 2012, seven years before Blackmon filed his Counterclaims.   ECF No. 328 at 26 *citing* ECF Nos. 284 at 19 ¶ 59; 273-2 at 5 ¶ 29; *see also* ECF No. 8.   As discussed again below, that Blackmon alleges he did not discover the Facebook page for the ORIGINAL CAMEO FAMILY until 2016 does not change this analysis.   Nor does Blackmon's decision to wait to sue.   *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 953-54 (9th Cir. 2001) *quoting Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821-22 (7th Cir. 1999) (stating a trademark case rejecting the argument that each new instance of infringement restarts the clock on laches and quoting *Hot Wax* as follows: "Without the availability of the application of laches to a claim arising from a continuing wrong, a party could, theoretically, delay filing suit indefinitely.").   The Court confirms that the presumption of laches

applies to bar Blackmon's Count III and IV infringement claims based on live performances by N. Leftenant as Blackmon's seven year delay was unreasonable.

Nonetheless, Blackmon is correct that the Court did not discuss the element of prejudice in its original decision.  The Court does so now.  N. Leftenant stated in his declaration in support of summary judgment that Blackmon knew and objected to his performance under the ORIGINAL CAMEO FAMILY banner as of 2012, and the ORIGINAL CAMEO FAMILY last performed in September 2015.  ECF No. 273-2 at 5 ¶¶ 29, 31.  There is no dispute Blackmon did not file his Counterclaims of infringement until 2019.  ECF No. 8.  In their Motion for Summary Judgment, Plaintiffs argued (albeit without citation) that they were prejudiced by Blackmon's delay because records for ORIGINAL CAMEO FAMILY performances prior to 2014 are no longer available.  ECF No. 306 at 42; *see also* ECF No. 282 (Plaintiffs' response to Blackmon's Motion for Summary Judgment) at n. 6 ("Defendant Blackmon references certain documents that he alleges plaintiffs failed to produce in discovery; however, one of the main reasons for prohibiting claims due to laches is that documents and evidence is lost or hard to retrieve.  Plaintiffs have been prejudiced by Defendant Blackmon's delay in bringing his alleged trademark infringement and related claims documents and information is no longer available.").[7]  Blackmon offered nothing to refute the lost records based on the passage of time.  ECF No. 284 at 44-45.[8]

The Court finds that Blackmon's delay was so substantial after learning of and objecting to N. Leftenant's ORIGINAL CAMEO FAMILY performance in 2012 that a presumption of prejudice should apply.  *FLIR Systems, Inc. v. Sierra Media, Inc*., 965 F.Supp.2d 1184, 1203 (D. Or. 2013)

---

[7]      N. Leftenant does not specifically discuss expectation-based prejudice, but he does discuss damages for which he could be liable when he denies alleged infringing acts connected to advertisements and performances by the ORIGINAL CAMEO FAMILY in Fairmont, North Carolina on May 30, 2015, Fresno, California on August 1, 2015, Flint, Michigan on July 1, 2017, Rochester, New York, and Houston, Texas. ECF No. 273-2 at 5 ¶ 30. While information regarding these alleged performances and other infringing acts may have appeared on N. Leftenant's ORIGINAL CAMEO FAMILY Facebook page, created as early as 2011 (*id*. at 4 ¶ 25), Blackmon did not sue until 2019. Blackmon argues it was Plaintiffs' obligation to establish he should have discovered the Facebook page prior to 2016 (ECF No. 284 at 42-43), but he offers no law to support this proposition. Alleged infringing conduct posted to the Facebook page could have been avoided had Blackmon, knowing of the ORIGINAL CAMEO FAMILY performance in 2012, not waited until 2019 to sue.

[8]      On page 45 of Blackmon's Response to Plaintiffs' Motion for Summary Judgment he cites to "*See id.* at 1254" for the proposition that summary judgment was granted, and a laches defense dismissed, even though there was a question of fact.  However, the "*id.*" citation refers to *Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109 (9th Cir. 2013) in which there is no page 1254.

6

1    (finding a presumption of prejudice arising from delay in bringing suit after applicable statute of

2    limitations runs, which evaporates if there is a question of fact when the party asserting infringement

3    learned of the infringement).  *See also Uber Inc. v. Uber Technologies, Inc.*, 521 F.Supp.3d 455, 467

4    (S.D.N.Y. 2021) ("For claims brought more than six years after plaintiff had knowledge of

5    infringement, a presumption of laches arises and the trademark owner must show the inequity of

6    dismissal. [Citing] *Excelled Sheepskin [& Leather Coat Corp. v. Oregon Brewing Co.*], 897 F.3d

7    [413], 419 (2nd Cir. 2018); *Kars 4 Kids, Inc. v. America Can!*, 8 F.4th 209, 221 (3rd Cir. 2021)

8    ("Because America Can first discovered Kars 4 Kids' allegedly wrongful conduct in 2003 and did

9    not bring its counterclaims until 2015, the statute of limitations had run on America Can's claims.[]

10   Accordingly, America Can bears the burden of disproving delay and prejudice."); *Nartron Corp. v.*

11   *STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002) ("In this Circuit, there is a strong

12   presumption that a plaintiff's delay in asserting its rights is reasonable as long as an analogous state

13   statute of limitations has not elapsed. … In evaluating whether a party has been diligent in protecting

14   its trademark, we look to the state-law statute of limitations for injury to personal property. *Id.*  Here,

15   under Michigan law, that period is three years. … In other words, a delay beyond the three-year

16   statutory period is presumptively prejudicial and unreasonable.) (Internal citations omitted.); *Black*

17   *& Decker (U.S.) Inc. v. Pro-TechPower, Inc.*, 26 F.Supp.2d 834, 845 (E.D. Va. 1998) (relying on

18   patent law, finding a delay of more than six years in bringing a suit raises a presumption of

19   prejudice).

20          However, recognizing that the Ninth Circuit has not yet adopted a presumption of prejudice

21   based on delay, the Court still notes the strong presumption in favor of laches that arises from filing

22   a claim after the analogous state statute of limitations has expired.  The Court finds the totality of

23   the disputed evidence regarding whether representations specific to lost ORIGINAL CAMEO

24   FAMILY performances prior to 2014, and allegations of advertisements and contracts pertaining to

25   the ORIGINAL CAMEO FAMILY are sufficient to create a question of fact pertaining to prejudice

26   and, therefore, whether laches bars Blackmon's Counterclaim Counts III and IV against N. Leftenant

27   for live performances.  As such, the Court grants Blackmon's motion to reconsider its finding that

28   laches bars Blackmon's Counts III and IV arising from N. Leftenant's live performances as the

1   ORIGINAL CAMEO FAMILY.  The Court finds its prior ruling in favor of N. Leftenant and against

2   Blackmon on this issue was erroneous.  The Court's Order below reflects that there is a question of

3   material fact to be decided regarding N. Leftenant's laches defense and whether Blackmon is entitled

4   to summary judgment in his favor on Counterclaim Counts III and IV.

5          c.    Willful Infringement.

6         With respect to alleged willful infringement by all Plaintiffs, Blackmon admits he made this

7   argument in his Opposition to Plaintiffs' summary judgment motion.  ECF No. 337 at 4-5 *citing*

8   ECF No. 284 at 42-43.  A review of Blackmon's Opposition demonstrate that the entirety of

9   Blackmon's willful infringement argument stated: "[A]t least as to Plaintiffs' N. Leftenant and

10   Jenkins, equity dictates that the laches defense is not available to them as they are willful trademark

11   infringers." ECF No. 284 at 41.  Not another word or argument was raised on this issue.  Still,

12   Blackmon cries foul because, supposedly, the Court did not specifically address this argument in its

13   Order.  The Court disagrees with Blackmon's contention.

14         The Court painstakingly considered whether each Plaintiff had an ownership interest in the

15   live performance and sound recording marks at issue.  ECF No. 328 at 12-23.  Specifically, as to N.

16   Leftenant, the Court discussed at length his involvement with CAMEO from its inception through

17   the present.  *Id*. at 21-23.  Further, the Court expressly addressed N. Leftenant's first and last

18   performances under the ORIGINAL CAMEO FAMILY banner, the timing of those performances,

19   and that Blackmon knew of the first performance in 2012 when his counsel wrote to N. Leftenant

20   that year regarding the alleged infringement.  *Id.* at 26 *citing* ECF Nos. 284 at 19 ¶ 59; 273-2.  The

21   Court found N. Leftenant a co-owner of the CAMEO marks through 2005, and a question of fact

22   regarding N. Leftenant's claim of co-ownership thereafter.  ECF No. 328 at 22-23.  While co-

23   ownership by N. Leftenant post-2005 is reconsidered below, these findings belie the notion that the

24   Court failed to consider whether N. Leftenant was a willful infringer of any CAMEO marks to which

25   Blackmon claims ownership.  The Court also carefully considered, found, and confirms that until

26   the effective date of the signed Performance Agreement, which occurred sometime in 2016, Jenkins

27

28

co-held rights to the CAMEO marks.[9]  The Court found and confirms a question of fact regarding Jenkins' ownership interest thereafter.

With respect to Bright, Johnson, and A. Leftenant, the Court not only analyzed their ownership interest in the marks, largely finding none, but also applied the factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) to determine whether any infringing conduct likely caused confusion, mistake or was used to deceive.  ECF No. 328 at 12-20, 28-30. This analysis, and the discussion of ownership by each Plaintiff that preceded the *Sleekcraft* analysis, belies the notion that the Court failed to consider whether any of the Plaintiffs were willful infringers.

Accordingly, Blackmon's Motion seeking reconsideration of the Court's findings based on a failure to consider whether Plaintiffs were willful infringers is denied.

> d.   Blackmon's Argument Regarding the Facebook Page and no Unreasonable Delay in Bringing his Infringement Claims.

A thorough review of Blackmon's Opposition to Plaintiffs' Motion for Summary Judgment shows he previously argued no unreasonable delay—that is, that it was reasonable for him not to sue before he did.  ECF No 284 at 42-43.  Blackmon also simply reiterates the conclusion that he "was or should not have been aware of the ORIGINAL CAMEO FAMILY Facebook page prior to 2016," and it was reasonable, therefore, for him not to sue.  ECF No. 337 at 4-5 *citing* ECF No. 284 at 43. Blackmon says the Court did not address these arguments in its ruling and "that such arguments at least create a genuine issue of material fact on the issue of laches if not warrant outright dismissal of the laches defense."  *Id.* at 5.

Blackmon's entire argument regarding his alleged delayed discovery of the ORIGINAL CAMEO FAMILY Facebook page is found in his Opposition to Plaintiffs' Motion for Summary Judgment as follows:

> In their motion, Plaintiffs fail to allege when Mr. Blackmon knew or should have known of the Original CAMEO Family Facebook page.  In order for Plaintiffs to show that Mr. Blackmon unreasonable delayed in fling [sic] suite [sic], they must establish when he knew of should have known of the

---

[9]     The undated 2016 Performance Agreement was signed by Jenkins and Blackmon on behalf of 7Group and pertained to CAMEO's performances at the Westgate Las Vegas Resort and Casino.  This agreement is referred to herein as the "Performance Agreement."  Blackmon and Jenkins' CAMEO performances at the Westgate Resort and Casino are referred to herein as the "Residency."

infringing Facebook page. *See Jarrow*, 304 F.3d at 838 (9th Cir. 2002). Plaintiffs proffer no evidence to establish a date that Mr. Blackmon knew or should have known of the Facebook page. Accordingly, as a matter of law, Plaintiffs cannot show Mr. Blackmon unreasonably delayed filing suit. As such, Mr. Blackmon's claims of infringement relating to the Facebook page are not barred by laches.

ECF No. 284 at 42-43. Not only is Blackmon's current argument a repeat of his prior argument, thereby demonstrating it is not a basis for reconsideration, but Blackmon's failure to discover a single Facebook page did not and does not now change the Court's findings. Indeed, it is undisputed that Blackmon knew of the ORIGINAL CAMEO FAMILY in 2012 when his lawyer sent N. Leftenant a letter regarding the alleged infringing conduct. ECF No. 273-2 at 5 ¶ 29, and at 40. Blackmon cites no law supporting the notion that he could wait seven years to sue on an infringement because he is an individual or because when Blackmon's counsel sent the letter to N. Leftenant regarding infringement, the ORIGINAL CAMEO FAMILY had performed only one show.

Given the undisputed fact that Blackmon was aware of the alleged infringing conduct as early as 2012, and the ORIGINAL CAMEO FAMILY performed a total of six times concluding in 2015, Blackmon's decision to wait to counterclaim until January 2019 based on his alleged late discovery of a Facebook page does not defeat Plaintiffs' laches argument. ECF No. 328 at 5, 26. Blackmon's argument that his delay was reasonable because he is an individual is duplicative of this argument raised in opposition to summary judgment sought by Plaintiffs. *See* ECF No. 284 at 43 stating: "Mr. Blackmon is an individual Plaintiff. Mr. N. Leftenant had performed only a single show. The scope of Mr. N. Leftenant's infringement simply did not justify the extraordinary expense of trademark litigation." It is true that the Court did not address these three sentences offered by Blackmon in its original decision on the cross motions for summary judgment, but absent a showing of error or manifest injustice, Blackmon fails to establish a basis for reconsideration.

Blackmon's Motion for Reconsideration based on his late discovery of a Facebook page and his belief it was reasonable not to sue do not support reconsideration of the Court's decision pertaining to the laches defense. *SC2006, LLC v. Arbor Agency Lending, LLC*, Case No. 2:18-cv-02003-JAD-BNW, 2021 WL 2744499, at *2 (D. Nev. July 1, 2021) ("a motion for reconsideration is not an avenue to re-litigate the same issues and arguments;" a party seeking reconsideration must

present "facts or law of a strongly convincing nature" that provide a "valid reason" why reconsideration is appropriate") (internal citations omitted).

### III.   Blackmon's Counterclaim Counts I and II Under § 32 of the Lanham Act.

Blackmon's Counterclaim Counts I and II are asserted under § 32 of the Lanham Act and states Blackmon seeks redress for N. Leftenant and all other Plaintiffs' use of "the CAMEO mark in connection with the live performances and sound recordings without Blackmon's consent or authorization."  ECF No. 212 (Blackmon's Amended Counterclaims) at 33 ¶ 65; *see also* ECF No. 337 at 3, 15, 18 seeking reconsideration of the Court's decision on Counts I and II.  However, neither N. Leftenant nor any other Plaintiff could have infringed, counterfeited or otherwise misappropriated the live performance mark in violation of Section 32 of the Lanham Act before registration of the live performance mark in March 2017.  There is no evidence presented by any party of a live performance by any Plaintiff under the ORIGINAL CAMEO FAMILY banner after that date.[10] There is also no evidence that N. Leftenant, A. Leftenant, Bright, or Johnson ever performed live as CAMEO or as associated with CAMEO after March 2017.  It is undisputed that the sound recording mark was never registered.  *Kendall-Jackson Winery, Ltd. v. E & J Gallo Winery*, 150 F.3d 1042, 1047 n. 7 (9th Cir. 1998) (registration required for a claim under Section 32); *United Tactical Systems, LLC v. Real Action Paintball, Inc*., Case No. 14-cv-04050-MEJ, 2014 WL 6788310, at *6 (N.D. Cal. Dec. 2, 2014) (Section 32 of the Lanham Act suit to be based on "infringement and counterfeiting of a registered trademark … brought by the registrant of the … mark") (internal quote marks omitted); *Synergy Tech & Design, Inc. v. Terry*, Case No. C-06-02073-JSW, 2007 WL 1288464, at *4 (N.D. Cal. May 2, 2007) *citing Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co.*, 592 F.Supp. 127, 136 (E.D. Penn. 1984).  Thus, there is no basis to reconsider these

---

[10]   Offering an alleged new fact, Blackmon argues that N. Leftenant participated in a live performance of the ORIGINAL CAMEO FAMILY in Anniston, Alabama, which "inferential[ly] would likely be later" than the other performances, the last of which occurred in 2015. ECF No. 337 at 16.  However, a review of the filing by Plaintiffs says the following: "ORIGINAL CAMEO FAMILY performed in Baton Rouge, Louisiana on October 12, 2012, Beaumont Texas on October 13, 2012, Warren, Ohio on August 29, 2014, Torrance, California on September 6, 2014, Anniston, Alabama *and* Sylvania, Georgia on September 26, 2015."  ECF No. 273-2 at 5 ¶ 28 (emphasis added) and at 5 ¶ 31 ("ORIGINAL CAMEO FAMILY has not performed since September 26, 2015.").  Thus, the Court finds that the Anniston, Alabama appearance was on September 26, 2015.  But, even if the Court found that the ORIGINAL CAMEO FAMILY performance occurred sometime after September 2015, Blackmon's new argument does not demonstrate whether the performance occurred a week, month or a year later.

1    decisions.  With respect to Jenkins, there is a question of fact regarding live performances after

2    March 28, 2017.  *See* discussion below in Section VI.

3    **IV.    Blackmon's Argument Regarding a Collective Ownership**.

4         Plaintiffs' Fifth Cause of Action sought a declaration that Plaintiffs were co-owners of the

5    CAMEO live performance trademark registered by Blackmon on March 17, 2017.  The Court's

6    findings that Johnson, Bright, and A. Leftenant have no ownership interest in the mark, and,

7    therefore summary judgment was granted in Blackmon's favor on Plaintiffs Count V with respect to

8    these Plaintiffs, is not contested.  Rather, Blackmon argues the Court's decisions regarding Jenkins

9    and N. Leftenant were "erroneous because the pleadings specified collective ownership by all five

10   Plaintiffs and Blackmon."  ECF No. 337 at 6.  This argument was not raised in Blackmon's  Motion

11   for Summary Judgment or Opposition to Plaintiffs' Motion for Summary Judgment and will not be

12   considered for the first time on a motion for reconsideration.  Further, as demonstrated below through

13   the analysis in *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1132 (11th Cir. 2018),[11]

14   Blackmon's argument makes no sense as the court made clear that each member of the band may be

15   "one of the holders" of the rights associated with a common law mark.

16   **V.    Blackmon's Argument Regarding Co-ownership Through 1982**.

17        Blackmon argues that co-ownership of the CAMEO marks through 1981 and 1982

18   (incorrectly stated by Blackmon as through 1982 only) when various CAMEO band members left

19   the band was "ill-advised."  ECF No. 337 at 7.  A supposed "ill-advised" decision is not an erroneous

20   decision that must be reconsidered.

21        Further, despite Blackmon's assertion to the contrary, the Court did not find co-ownership

22   based on "mere participation."  Rather, a thorough discussion of ownership by each participant was

23   considered based on facts specific to that band member.  ECF 328 at 13-23.  Therein, the Court

24   stated ownership "is obtained by actual use" (not participation).  *Id*. at 13 *citing Airs Fragrance*

25   *Prods. v. Clover Gifts*, Case No. 2:05-cv-0960-RCJ-RJJ, 2008 WL 11385447, at *3 (D. Nev. Sept.

26   24, 2008) (citing J. Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition (4th ed.

27   2008), § 16:1).  Finally, as discussed below in Section VII, that each member of the original CAMEO

28

---

[11]      Hereinafter, *Commodore Entm't Corp. v. McClary* will be referred to as "*Commodores*."

12

band could hold rights to the CAMEO marks so long as they remained band members is supported by the decision in *Commodores* on which Blackmon relies.

**VI.    Blackmon's Contentions Specific to Tomi Jenkins**.

It is undisputed that (1) Jenkins was a founding member of CAMEO, performed with the band from its inception through 2018—approximately 45 years, (2) Jenkins appeared on all 18 albums released by CAMEO, (3) Jenkins appeared on the last sound recording released by CAMEO—El Passo—in 2019 with Blackmon, (4) Jenkins never appeared with the ORIGINAL CAMEO FAMILY, (5) Jenkins did not participate in the release of a single which Blackmon contends was an infringement of the common law mark CAMEO held in sound recordings, (6) Blackmon offered nothing to show Jenkins ceased performing or recording with the band prior to his 2018 departure, and (7) there is no law standing for the proposition that Blackmon's role as producer and handler of many, if not most, financial matters for CAMEO precludes Jenkins' co-holder of rights to the CAMEO marks while he was a continuous (and original) member of the band promoting the commercial use of the marks through recordings and live performances.  ECF No. 328 at 19-20 *citing*, *inter alia*, ECF Nos. 284 at 2 ¶ 2, and at 15 ¶ 40; 292 (Plaintiffs' Opposition to Blackmon's Motion for Summary Judgment) at 11 ¶ 36 and at 20 ¶ 62.

Blackmon does not take issue with these facts.  Instead Blackmon argues there were many others who performed with CAMEO when Jenkins did.  Whether someone else may have performed with CAMEO at a time when Jenkins also performed does not alter the Court's analysis of Jenkins' rights in the marks while he was an undisputed continuous member of the commercial operation of CAMEO from 1975 through the date in 2016 when he signed the Performance Agreement.

Blackmon's reliance on *Rick v. Buchansky*, 609 F.Supp. 1522 (S.D.N.Y. 1985) is misplaced.  First, obviously, this 1985 decision is not an intervening change in the law.  Second, Blackmon did not argue the premise discussed in *Buchansky* in his Motion for Summary Judgment or Opposition to Plaintiffs' Motion.  ECF Nos. 276-1, 284.  That is "frequent turnover" in CAMEO, whether or

not true, was not argued by Blackmon prior to his Motion for Reconsideration.  Thus, the Court does not consider this argument.[12]

Blackmon argues that "there are disputed issues of fact as to … [Jenkins'] ownership interest pre-2016."  ECF No. 337 at 14.  Blackmon supports this contention only by citing back to the argument summarized above.  *Id*.  Blackmon adds nothing more to support his conclusion.  On pages 17 and 18 of his Motion for Reconsideration, Blackmon repeats, again, that Jenkins did not have co-ownership rights to the CAMEO marks "through the day prior to the effective date of the 2016 Performance Agreement."  ECF No. 337 at 17-18.  This argument, like the argument on page 14 of his Motion, cites to *Buchansky*.  Blackmon does not identify any factual or legal error in these short discussions and makes no assertion of manifest injustice (or any other basis for reconsideration).  Blackmon's argument that the Court should reconsider its decision regarding Jenkins' pre-2016 Performance Agreement ownership of the CAMEO marks, based on Blackmon's conclusory assertions, is unfounded and rejected.

The Court confirms that Jenkins held, along with Blackmon, held the rights to the CAMEO live performance and sound recording common law marks, based on his uninterrupted use of these marks in commerce as a founding and continuing member of CAMEO through the day before the effective date of the 2016 Performance Agreement.  Blackmon's Counterclaims against Jenkins arising from any alleged infringement by Jenkins prior to this date fail.  Summary Judgment is confirmed in favor of Jenkins and against Blackmon on Blackmon's Counterclaims Counts I-V and Plaintiffs' Count V measured from Jenkins' original and continuous involvement with CAMEO (and its predecessor band) through the day prior to the effective date of the 2016 Performance Agreement.

With respect to the period commencing with the effective date of the 2016 Performance Agreement, the Court finds there remains a question of fact regarding what rights, if any, Jenkins retained through the date he admits he resigned from the CAMEO in 2018.  Upon resignation, as is true for N. Leftenant (discussed below), Jenkins took no rights to the CAMEO marks with him.  *Commodores*, 879 F.3d at 1132.  This applies to Blackmon's Counterclaim Counts I through V and

---

[12]    Even if the totality of Blackmon's arguments could be considered to include an argument regarding frequent turnover, this contention does not change the fact that Jenkins remained, uninterrupted, with the band for 45 years.  ECF No. 284 at 2 ¶ 2.

Plaintiffs' Fifth Cause of Action for Declaratory Judgment regarding the registered live performance mark.

**VII.    Blackmon's Additional Contentions Regarding N. Leftenant**.

Blackmon alleges the Court erroneously decided there is a question of fact as to N. Leftenant's co-ownership of the CAMEO marks after he "left the band" in 2005.  To this end, the Court confirms that it is undisputed that N. Leftenant ceased performing with CAMEO sometime in 2005, while original founding members Blackmon and Jenkins continued as CAMEO after that date and until 2018 when Jenkins departed the band.[13]   ECF Nos. 273-2 at 3 ¶ 14; 284 at 15 ¶ 40 (not disputing the date of Jenkins' departure).

There is no dispute CAMEO last released a recordings in 2000 and did not release another until 2016 when N. Leftenant, and other Plaintiffs who had left the band before N. Leftenant, released "We In The House" under the CAMEO common law mark without Blackmon's (or Jenkins) involvement or permission.  ECF Nos. 212 at 23 ¶ 28; 284 at 17-18 ¶¶ 50-51; 292 at 11 ¶ 36.  In 2019, Blackmon and Jenkins released El Passo under the CAMEO common law trademark in sound recordings.  ECF No. 284 at 2 ¶ 2.  N. Leftenant created the ORIGINAL CAMEO FAMILY in 2011 or 2012 and appeared as part of this group six times in 2012 through 2015.  ECF Nos. 273-2 at 5 ¶ 28; 328 at 3:7; 4:21-24.

Blackmon argues the Ninth Circuit holding in *Robi v. Reed*, 173 F.3d 736 (9th Cir. 1999) is fatal to N. Leftenant's claim of an ownership interest in the CAMEO marks after he ceased performing with the band in 2005.  In *Robi*, there were conflicting claims to the right to use the trademark name "The Platters" by individuals who, at one time, were associated with the group, founded by Reed, who was the undisputed manager, an original singer, the only surviving member of the group, and the only member continuously involved with the group.  *Id*. at 738.  In contrast, Robi left the group "years earlier" and had passed away assigning his rights to his wife who never performed with The Platters.  *Id*. at 740.  The Ninth Circuit stated that it has "been held that a person who remains continuously involved with the group and is in a position to control the quality of its

---

[13]     Blackmon's attempt in his Motion for Reconsideration to argue an average number of annual performances by CAMEO was not raised in any filing prior to the instant Motion and is unsupported by evidence.  As Blackmon points out, attorney argument is not evidence.  The Court disregards this argument.

services retains the right to use the mark …." *Id*. *citing Buchansky*, 609 F. Supp. 1522 (*supra*). The Ninth Circuit held that Reed was the person who maintained the group's continuity and was in control of the quality of its services. *Id*. at 740. When Robi left the group, he took no rights with him. *Id*.[14] The Court finds the facts and holding in *Robi* are instructive, but not fatal to N. Leftenant's claims based on distinct facts.

The Court next considers the decision in *Commodores*, 879 F.3d 1114 (*supra*), to ensure no error in its application of fact to law with respect to N. Leftenant's post-2005 ownership interest. The Commodores formed in 1968 with six original members, one of whom was McClary. *Id*. at 122. In 1978, these six members and their managers entered into a general partnership agreement stating, in pertinent part, that "Upon the death or withdrawal of less than a majority of the Partners, the remaining majority of the Partners shall continue to have the right to use the name THE COMMODORES for any purpose." *Id*. (Emphasis in Original.) That same year the partners registered Commodores Entertainment Corporation ("CEC") as a Nevada corporation. *Id*. CEC entered into an agreement with Motown Record Corporation affirming the group, as a whole, "jointly and not severally," had exclusive rights to The Commodores name. *Id*. In 1982 Lionel Ritchie left the group and another member passed away leading, in 1984, to the remaining members, including McClary, to amend their partnership agreement to state CEC, which conducted the business of the group, was the holder of "all rights in and to the Group name 'THE COMMODORES' … ." *Id*. at 1123 (emphasis in original).

The Eleventh Circuit notes that McClary admitted he left the group in 1984 and next performed with The Commodores in 2010. *Id*. Unlike the case at bar, however, the court had undisputed evidence that after McClary's departure, the group continued to produce music including a song that won a Grammy award in 1986.[15] *Id*. CEC registered "THE COMMODORES" as a word mark and a word mark with design in 2001 that "granted CEC exclusive rights to the marks for

---

[14]    In *Lewis v. Katz*, a decision that is not controlling on this Court, the California Court of Appeals noted the Ninth Circuit decision in *Robi* "reaffirms that the determination of title to a name based on continuous involvement with the group and control over the group's services is a question of fact, not law." Case No. A111654, 2006 WL 1875579 (Cal. Ct. App. 1st Dist. July 7, 2006).

[15]    Here, CAMEO released its last album in 2000, while N. Leftenant was a member of the band, did not release another recording until 2019 after this lawsuit was filed. In between, N. Leftenant released "We In The House" under the CAMEO mark.

entertainment services … as well as for musical sound and video tapes …." *Id*.  (internal quote marks and brackets omitted).

In 2009, McClary and other former Commodores members performed live billing the performance as the "Commodores Reunion."  *Id*. at 1124.  In 2010, McClary appeared with The Commodores when a guitarist became ill, but "[a]t no point did [he] ask to rejoin the group."  *Id*.  Nothing else happened until 2013 when McClary formed a group called "Commodores Featuring Thomas McClary" and scheduled a performance in New York.  *Id*.  CEC sued one year later in 2014.  *Id*. at 1125.

Upon considering all of the above and the law pertaining to trademarks, the Eleventh Circuit summarized the issue as: "What happens to the ownership of a trademark in the name of a performing group when the group's membership has evolved with time?"  *Id*. at 1131.  The court concluded that "[c]ommon-law trademarks existed in the name 'The Commodores,' and the original owner of the marks was the group as a whole" because "the marks were used in commerce, beginning with the early days of the group's performances and recordings …"  *Id*. at 1132.  Thus, McClary, along with others, as a member of the original group, was one of the holders of rights to The Commodores marks.  *Id*.

However, "[o]wnership of the marks did not stay with McClary when he left the performing group."  The marks "could not be divided from the group" and given to individual members.  *Id*.  The court based this decision on McClary's departure from the group more than three decades before the suit was filed and that no reasonable juror "could have found that McClary remained with the group."  *Id*.  The court found that over a 15 year period McClary had no interaction with The Commodores and his single performance in 2010, and a "listening session" with a few members of the group that same year, "in no way suggest[ed] continued involvement with the group.  *Id*.  The court concluded: "On this record … the common-law rights to the marks remained with the group members who continued to use and exert control over the group The Commodores …."  *Id*. at 1132-33.

a.      The Decision in *Commodores* Demonstrate no Error Regarding Co-Rights to the CAMEO Marks by N. Leftenant through his Departure in 2005.

This case, on which Blackmon heavily relies, demonstrates no error of fact or law in finding CAMEO common law marks were jointly, but not severally, held by Blackmon, N. Leftenant (and each of the Plaintiffs) in the early days of CAMEO's existence (approximately 1975 through departures in 1981 and 1982 based on the date of departure). *Commodores* also confirms that N. Leftenant, who remained uninterrupted with CAMEO into 2005, was a holder of the common law marks through his departure date. There is no evidence to the contrary.

b.      N. Leftenant's Post-2005 Rights to the CAMEO Marks.[16]

No party disputes an absence of evidence regarding what N. Leftenant did between 2005, after he ceased performing with CAMEO, and 2011/12 when N. Leftenant formed and began performing as the ORIGINAL CAMEO FAMILY. However, the Court's finding, based on uncontroverted facts that Jenkins "continuously participated in CAMEO through 2018 when he left the band" supports the conclusion that CAMEO continued operating as a musical group throughout these years. ECF No. 328 at 20-21. This also supports the conclusion that Blackmon and Jenkins, until he signed the Performance Agreement in 2016, were the only two original remaining members of the group between 2005 and 2016, and it is these two individuals who retained the rights to the CAMEO marks. Blackmon further points out N. Leftenant did not dispute that CAMEO "conducted thousands of live performances in the United States and abroad"; "CAMEO … [was] scheduled to perform its first live, in-person show since the onset of the COVID-19 pandemic on September 11, 2021, in Los Angeles, CA"; and "CAMEO has maintained and continues to maintain a robust

---

[16]      Blackmon seeks reconsideration of his Counterclaim Counts III and IV, as they pertain to live performances by Plaintiffs Bright, Johnson, and A. Leftenant, as well as N. Leftenant who is discussed above. The Court found Bright did not perform live as CAMEO, except as requested by Blackmon, or ever with the ORIGINAL CAMEO FAMILY after his departure from CAMEO. The Court reached the same conclusion with respect to A. Leftenant for whom there is no evidence of a live performance as CAMEO or as part of the ORIGINAL CAMEO FAMILY after his departure from the group. Thus, summary judgment in favor of these Plaintiffs and against Blackmon on Blackmon's Counterclaim Counts III and IV, arising from live performances, was properly granted.

Johnson appeared once in 2012 as part of the ORIGINAL CAMEO FAMILY. No evidence to the contrary was presented by Blackmon. This was seven years before Blackmon brought his Counterclaims. This delay by Blackmon as to Johnson was unreasonable. Whether Johnson was prejudiced by this delay is a question of fact, but even assuming he was not prejudice, the Court finds the likelihood that Blackmon can demonstrate confusion, mistake or deception by Johnson under *Sleekcraft* is highly unlikely. Nonetheless, the Court will allow Blackmon's Counterclaim Counts III and IV to proceed to trial against Johnson as they relate to CAMEO's live performance common law mark.

national and international touring schedule." ECF No. 282 at 4 ¶¶ 6-7. Blackmon asserted, and supported with declarations, that he controlled CAMEO after N. Leftenant ceased performing with the band in 2005. ECF No. 276-1 at 10-11 ¶¶ 9-15 *citing* a production manager who was with the group from 1987 to the "mid 2000s" (ECF No. 93 at 2 ¶ 3); a consultant who, between 2010 and 2020, states he worked with CAMEO—albeit it is not clear if this was constant or on occasion—and all business decisions were made by Blackmon (ECF No. 92 at 2 ¶¶ 2-3); and a statement by Jenkins that Blackmon was "the boss," which appears in a letter highly critical of Blackmon (ECF No. 106-3 [17]). Further, there is no dispute that N. Leftenant chose the name the ORIGINAL CAMEO FAMILY to distinguish his band from the band that included Blackmon and Jenkins. ECF No. 273-2 at 4 ¶ 24. The question that the Court considers is whether all of these uncontested facts, considered together with the decision in *Commodores*, require the Court to reconsider N. Leftenant's co-ownership of the CAMEO marks after his 2005 departure. The answer is yes.

While not supported by independent evidence, there is no dispute that Blackmon and Jenkins, the only original CAMEO band members who remained with the group after 2005, continued to perform as CAMEO albeit on unknown dates in unknown locations. It is also undisputed that approximately six years passed between N. Leftenant's departure from CAMEO and his creation of the ORIGINAL CAMEO FAMILY, which is the first time N. Leftenant offers evidence of attempting to use the CAMEO marks in any fashion after 2005. After a single performance by the

---

[17]     Jenkins' letter states: "Larry, I have known you personally and professionally for 46 years. That's a lifetime for a lot of people. We have had great successes, historic, really. For a business that we both know all to [sic] well, to have achieved what we as Cameo have is nothing short of a miracle. From Cardiac Arrest to Sexy Sweet Thing, every single musician who passed through Cameo played a significant role in that success. We are blessed to be here. Wayne, Kenny Hairstyle, and Mike are not. I think about those brothers often. I think about our club days in New York and Michigan, and Canada. Going to Europe for the first time, Africa. We've had a hell of life, man. We've actually created a legacy of music that will be remembered and played and revered for many years to come. That is a monumental achievement. Which makes what I have to say very difficult. The revelation of malfeasance on your part as it concerns the SoundExchange situation has irrevocably damaged our life long friendship as well as our working relationship. You were the boss. Your job was to make sure that everyone in your charge were alright. Instead of distributing the money you received to the musicians who were very rightly entitled to it from SoundExchange, you lined your pockets for 3 straight years. No regard for the families of those men who helped you get that money. None at all. Not Wayne Coopers, not Kenny Hairston's, not Mike Burnett's. No regard for mine, who you called your brother. Or the other men, yes, Nathan included. Man, I remember when we'd be in the studio back in the day, we used to say whoever was in there at the time we recorded were a part of that spirit, that music. And we made some of the best shit of our careers. It was all for one and one for all. But that changed somewhere along the way. I'm not going to reiterate what I wrote in my previous letter. This one is written because you did nothing I so humbly asked of you. To just to do what is right. For the sake of 46 years. So with all that, this is my formal letter of resignation. I can no longer stand on any stage with you again. May God have mercy on your soul."

ORIGINAL CAMEO FAMILY in 2012, Blackmon sent a cease and desist letter to N. Leftenant asserting the ORIGINAL CAMEO FAMILY infringed on Blackmon's marks.   In 2016, N. Leftenant, with other former CAMEO members, applied for a trademark in CAMEO, which was not rejected until 2018.  ECF No. 284 at 17-19 ¶¶ 50, 55.  In 2016, N. Leftenant released "We In The House" under the CAMEO common law mark for sound recordings while the trademark application was pending.  *Id*. at 17-18 ¶¶ 50, 51.  The 2016 release of "We In The House" is the last evidence before the Court of activity by N. Leftenant pertaining to the CAMEO marks.

Using *Commodores* as its guide, and considering the holding in *Robi*, the Court reconsiders whether the above eliminates all questions of material fact regarding N. Leftenant's rights to the CAMEO marks after his 2005 departure from Blackmon and Jenkins who continued live performances under the original CAMEO name.

### 1.    Plaintiffs' Fifth Cause of Action.

Plaintiffs' Fifth Cause of Action is titled "Declaratory Judgment that Plaintiffs are Co-Owners of the CAMEO Trademark & Damages."  ECF No. 252 (Plaintiffs' Third Amended Complaint) at 17.  Through this claim, N. Leftenant seeks a declaration that he is a co-owner of the CAMEO mark registered by Blackmon in March 2017.  Registration "constitutes prima facie evidence of the validity of the registered mark and of [Blackmon's] exclusive right to use the mark on the goods and services specified in the registration." *Applied Info Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) *citing Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999); *see also* ECF No. 328 at 12.  Blackmon retains the ultimate burden of persuasion in his trademark infringement Counterclaim action; that is, proof of infringement.  *Tie Tech, Inc. v. Kinedye Corp.*, 296 F.3d 778, 783 (9th Cir. 2002).  To establish trademark infringement, the purported trademark owner "must show that it is '(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (per curiam)).

Upon reconsideration, the Court finds there is no evidence supporting the conclusion that N. Leftenant retained any rights to the CAMEO mark for live performances after the of registration by

Blackmon in March 2017.  A review of N. Leftenant's declarations (there are two) and Plaintiffs' Motion for Summary Judgment demonstrate no evidence or argument challenging the validity of Blackmon's mark.  N. Leftenant admits he ceased performing with CAMEO in 2005 and the evidence supports that he never performed with Blackmon or Jenkins again.  When N. Leftenant ceased performing with CAMEO, and CAMEO indisputably continued its live performances with original members, the right to the live performance mark stayed with the group.  Upon registration of the mark by Blackmon in 2017, N. Leftenant had no rights to use the mark.  For this reason, N. Leftenant's claim found in the Fifth Cause of Action in Plaintiffs' Third Amended Complaint fails and judgment is granted in favor of Blackmon and against N. Leftenant on this claim.

> 2.      *The CAMEO Common Law Marks*.

Commencing with N. Leftenant cessation of performances with CAMEO in 2005, through N. Leftenant's last alleged infringing act (release of "We In The House" in 2016), Blackmon argues he was owner of the CAMEO common law mark in sound recordings and live performances.  N. Leftenant, like McClary in *Commodores*, provides no evidence of involvement with CAMEO for at least a six year period (2005 to 2011) at which point he created the ORIGINAL CAMEO FAMILY to which Blackmon objected in 2012.  There is no dispute that N. Leftenant chose the name ORIGINAL CAMEO FAMILY to distinguish his group from CAMEO in which Blackmon, and Jenkins through 2018, continued to perform and which operations Blackmon continued to oversee.  N. Leftenant appeared several times in the ORIGINAL CAMEO FAMILY after Blackmon sent his cease and desist letter to N. Leftenant, and N. Leftenant released "We In The House" under the CAMEO mark in 2016 eleven years after his departure from the band.  These facts are insufficient to demonstrate a continued, uninterrupted involvement with CAMEO or control over CAMEO sufficient to create a question of fact regarding N. Leftenant's right to continued use of the CAMEO marks after 2005.  *Commodores*, 879 F.3d at 1131-33; *Robi*, 173 F.3d at 740.[18]

---

[18]       Citing to *Commodores*, Blackmon raises the issue of abandonment.  ECF No. 373 at 10.  "Abandonment is relevant where an infringing user seeks to assert that an owner of a mark has given up those rights."  *Commodores*, 879 F.3d at 1135.  However, Blackmon also did not raise this issue in opposition to Plaintiffs' Motion for Summary Judgment or in his moving papers.  To the extent Blackmon raises abandonment for the first time on reconsideration it is a new argument the Court does not address.

On this record, the Court finds there is nothing to undermine the conclusion that the common law marks remained with the original CAMEO group members who continued to use the marks (Blackmon and Jenkins) and that N. Leftenant took nothing with him in 2005.  As in *Robi* and *Commodores*, there is substantial evidence that Blackmon and Jenkins (through 2018) were the only continuous original members of the band engaged in live performances.  ECF No. 282 at 4 ¶ 7.

Thus, upon reconsideration, the Court concludes the Order on the cross motions for summary judgment finding a question of fact regarding N. Leftenant's continued co-ownership rights in the CAMEO marks after 2005 was erroneous as a matter of law.  When N. Leftenant left CAMEO in 2005, he left behind the ownership interest or right to use the CAMEO marks with those original band members who remained.

**VIII.**   ***Sleekcraft* and Blackmon's Counterclaim Counts III and IV Against N. Leftenant**.

To establish a violation of Section 43(a) of the Lanham Act and common law trademark rights, Blackmon must show more than the use of a protectable mark; that is, he must also show the "use of its trademark 'is likely to cause confusion, or to cause mistake, or to deceive.'"  *Adobe Systems Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) *quoting Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(a)(1)); *Caesars World, Inc. v. Milanian*, 247 F.Supp.2d 1171, 1193 (D. Nev. Feb. 19, 2003) (internal citations omitted).[19]  Looking to the eight factor test established in *Sleekcraft* (*supra*),[20] Blackmon's entire argument, as it applies to N. Leftenant, is found in one sentence on page 15 of the Motion for Reconsideration.  That argument is stated as follows: "The Court failed to perform a *Sleekcraft* analysis, which alone merits reconsideration."  ECF No. 337 at 15.  Blackmon does no

---

[19]     Blackmon contends there is sufficient (axiomatic evidence) that N. Leftenant infringed.  ECF No. 275-5 (Decl. of Counsel for Blackmon in support of Summary Judgment) at 35.  *See also* ECF No. 337 at 16.  In his Motion for Reconsideration, Blackmon cites to *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997) for the proposition that an offer to sell, even without a sale can result in liability under § 32 of the Lanham Act.  ECF No. 337 at 17.  However, in *Shilon*, the Defendant "a Los Angeles clothing manufacturer, offered to sell 10,000 sets of counterfeit Levi Strauss labels and tags and 10,000 pairs of "blank" counterfeit Levi's jeans."  *Id*.  The defendant also provided "a sample set of counterfeit Levi's tags and labels and with a single pair of 'blank' jeans with Levi Strauss trademark arcuate stitch pattern on the back pockets."  *Id*.  Further, the defendant "admitted to offering to sell counterfeit Levi's jeans and components. Such an offer will suffice to create liability under the Lanham Act."  *Id*. at 1314.  These facts are not similar to the facts before the Court.

[20]     These factors include "(1) strength of the mark(s); (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) defendant's intent; and (8) likelihood of expansion."  *Id.* 559 F.3d at 1076 (internal citation omitted).

analysis himself.  *Id.*[21]  Despite this failure, because the Court has determined N. Leftenant retained no rights to the CAMEO marks after 2005, an application of the *Sleekcraft* factors is appropriately done.

The Court confirms that there is no dispute regarding the strength of the CAMEO marks or similarity of services, which the Court interprets as relatedness of the goods, as these factors are applied to the live performances and sound recordings marks asserted in Counts III and IV of Blackmon's Counterclaims.  ECF No. 292 at 27-28.

N. Leftenant admits he released "We In The House," in which Bright, A. Leftenant, and Johnson were also involved, under the CAMEO common law sound recording mark.  As previously stated, there is also no question of fact regarding degree of consumer care with respect to the sound recording mark because "virtually no amount of consumer care can prevent confusion where two entities have the same name." *Electropix v. Liberty Livewire Corp.*, 178 F.Supp.2d 1125, 1134 (C.D. Cal. 2001).  But, as demonstrated in *Electropix*, this does not end the inquiry.  Questions remain pertaining to marketing channels, intent, actual confusion, and the likelihood of expansion.

As to N. Leftenant's intent, neither party presents evidence that he knew or understood that CAMEO owned a common law mark in sound recordings or that Blackmon's mark in live performances was pending when "We In The House" was released in 2016.  In fact, N. Leftenant applied for a mark in CAMEO at the time of the release.[22]  To the extent Blackmon cites to N. Leftenant's contracts for the ORIGINAL CAMEO FAMILY, there is a dispute of fact.  *Compare* ECF Nos. 273-2 (N. Leftenant's Declaration) ¶¶ 27, 30 *and* 299 (Blackmon's Reply in support of Summary Judgment) at 12.  These citations also go to actual confusion for which the evidence is, at best, meager and insufficient to eliminate all question of fact.  *Id.*

While there may be a recognition that Plaintiffs and Blackmon used similar marketing channels, the Court has no information as to what those are or if they were even used with respect

---

[21]    To the extent Blackmon relies on the USPTO's rejection of N. Leftenant's application for a trademark in CAMEO, which occurred in 2018, this is three years after the last date on which the case record identifies a live performance of the ORIGINAL CAMEO FAMILY and two years after release of "We In The House."  ECF No. 284 at 17-19 ¶¶ 50, 51, 54, 55.  Therefore, the rejection could not have put N. Leftenant (or anyone else who appeared with the ORIGINAL CAMEO FAMILY or on the sound recording) on notice that they were in violation of any CAMEO marks.
[22]    Further, there is no evidence of intent to infringe by Bright, Johnson or A. Leftenant.  ECF No. 328 at 29.

to "We In The House."  There is also insufficient evidence regarding the likelihood of expansion. "A strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing."  *Sleekcraft*, 599 F.2d at 354 (internal citations and backets omitted).  While N. Leftenant had a Facebook page for the ORIGINAL CAMEO FAMILY, there is no discussion by the parties that the sound recording was ever promoted therein. *See* ECF Nos. 273-2 at 36; 276-1 at 29:1-30:2; 299 at 12-13.  There is also no evidence that Bright or A. Leftenant promoted a sound recording as CAMEO or the ORIGINAL CAMEO FAMILY after their respective departures from the band.  *Id*.  Johnson posted once on Facebook in 2012.  ECF No. 275-6 at 2.  This is insufficient to eliminate all questions of fact with respect to marketing, expansion, confusion or intent.

In sum, the Court finds the totality of the information presented does not resolve all questions of material fact under *Sleekcraft* with respect to sound recordings such that the Court denies summary judgment in favor of Blackmon on his Counterclaim Counts III and IV.

**IX.    Reconsideration of Plaintiffs' Fourth Cause of Action for Declaratory Judgment that Plaintiffs are Entitled to Royalties from SoundExchange and AARC**.

Blackmon states the Court failed to make a clear ruling on Plaintiffs' Fourth Cause of Action. Plaintiffs' Fourth Cause of Action in their Third Amended Complaint states: "Plaintiffs have alleged that Plaintiffs and Defendant Blackmon are featured artists of CAMEO who are entitled to receive and collect a *pro rata* share of featured artist royalties from SoundExchange, AARC and UMG for the CAMEO recordings on a master by master basis as indicated on Exhibit A."  ECF No. 252 at 15. The Court addressed this issue in footnote 10 of its original Order.  ECF No. 328 at 12 n. 10.  In the Stipulation to Dismiss (ECF No. 269)  the parties state:

> IT IS HEREBY STIPULATED AND AGREED by and between the parties and/or their respective counsel(s) that the claims contained in the Fourth Cause of Action of the Third Amended Complaint (Docket No. 252) are voluntarily dismissed with prejudice pursuant to Fed. R. Civ. Pro 41(a)(1)(A)(ii) solely to the extent that it seeks a declaration that (i) Plaintiffs are "featured CAMEO artists" for the purpose of collecting featured artist royalties from Sound Exchange [sic] and AARC, (ii) that Plaintiffs are entitled to *pro rata* share of the "featured artist" royalties from Sound Exchange and AARC, and (iii) that Plaintiff Jenkins is entitled to a *pro rata* share of the "featured artist" royalties from Sound Exchange and AARC for the *El Passo* single.

In Plaintiffs' Opposition to Blackmon's Motion for Summary Judgment, Plaintiffs state they "have not asserted a claim regarding UMG royalties in the Third Amended Complaint."  ECF No. 292 at 51.  Nor did Plaintiffs include such claim in their Fourth Cause of Action or in their prayer for relief.  ECF No. 252 at 15-16, 18.  Taking Plaintiffs' representation as accurate, no claim was made for royalties arising from UMG and, therefore, there is nothing for the Court to rule upon. Having dismissed their featured artist allegations relating to royalties from SoundExchange and AARC (*id*. ¶¶107-112, 119, 120, and 121), and having dismissed their claim to a pro rata share of royalties from SoundExchange and AARC (*id*. ¶¶ 113-118 of the Third Amended Complaint), the Court finds there is nothing left to determine.  Plaintiffs' Fourth Cause of Action is dismissed.

## X.   **Plaintiffs' Third and Fourth Affirmative Defenses for Fraud and Unclean Hands**.

To the extent the Court failed to address Plaintiffs' claims of fraud and unclean hands, asserted as their third and fourth affirmative defenses to Blackmon's Counterclaims, the Court finds Plaintiffs did not move for summary judgment on these claims, and Blackmon's three sentences seeking summary judgment against Plaintiffs fail to establish the absence of material fact with respect to the necessary elements of these claims.[23]  Blackmon's Motion for Summary Judgment on Plaintiffs' Third and Fourth Affirmative Defenses is denied.

## XI.   **Order**

IT IS HEREBY ORDERED that the Motion for Reconsideration (ECF No. 337) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED the Court revises its prior Order as follows:

1.    Summary Judgment is granted in favor of Lawrence Blackmon and against N. Leftenant with respect to N. Leftenant's rights to the CAMEO marks after N. Leftenant ceased performing with the band in 2005.  However, Counterclaims III and IV asserted by Lawrence Blackmon against Nathan Leftenant arising from live performances shall proceed to trial on a

---

[23]    In his Motion for Summary Judgment, Blackmon asserts the following conclusions: "Plaintiffs have failed to allege the requisite prima facie elements of fraud even cursorily, much less allege fraud with the required particularity. Moreover, Plaintiffs' lone allegation is factually incorrect.  Mr. Blackmon never represented to the patent office that 'he was the sole owner sole user of the mark' and there is no evidence of record to suggest otherwise.  For at least these reasons, the Court should grant summary judgment in favor of Mr. Blackmon as to the third and fourth affirmative defenses."  ECF No. 276-1 at 36-37.

material questions of fact as to whether the claims are barred by the doctrine of laches and, if not, whether Blackmon is able to prevail on his infringement claims, which requires a demonstration that use of the mark is likely to cause confusion, mistake, or to deceive;

2.    Summary judgment is granted in favor of Lawrence Blackmon and against Nathan Leftenant on Plaintiffs' Fifth Cause of Action for Declaratory Relief;

3.    Summary judgment is granted in favor of Lawrence Blackmon on Blackmon's Counterclaims I-V as well as Plaintiffs' Count V, and against Jenkins commencing with the date Jenkins resigned from CAMEO in 2018;

4.    Summary judgment is denied on Lawrence Blackmon's Counterclaim Counts III and IV against Gregory Johnson arising from Johnson's live performance in the ORIGINAL CAMEO FAMILY on one occasion in 2012;

5.    Lawrence Blackmon's Motion fails to establish summary judgment in his favor and against Plaintiffs on Plaintiffs' Third and Fourth Affirmative Defenses; and,

6.    Plaintiffs' Fourth Cause of Action for Declaratory Judgment that Plaintiffs are entitled to royalties from AARC and SoundExchange is dismissed.

IT IS FURTHER ORDERED that except as stated herein, the Court's Order at ECF No. 337 is neither revised nor reversed.

IT IS FURTHER ORDERED that Plaintiffs' Second Motion for Sanctions (ECF No. 349) is DENIED.

IT IS FURTHER ORDERED that the parties shall submit a joint pretrial order no later than sixty (60) days after the date of this Order.

Dated this 11th day of August, 2022.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE