UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NATHAN LEFTENANT, ARNETT LEFTENANT, JERYL BRIGHT, GREGORY JOHNSON, and THOMAS ("TOMI") JENKINS,<br><br>        Plaintiffs,<br><br>    v.<br><br>LAWRENCE ("LARRY") BLACKMON,<br><br>        Defendant. | Case No. 2:18-cv-01948-EJY<br><br>**ORDER** |

LAWRENCE ("LARRY") BLACKMON,

        Counterclaim Plaintiff,

    v.

NATHAN LEFTENANT, ARNETT LEFTENANT, JERYL BRIGHT, GREGORY JOHNSON, and THOMAS ("TOMI") JENKINS,

        Counterclaim Defendants.

Pending before the Court is Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 60. ECF No. 371. The Court reviewed the Motion and Opposition (ECF No. 376). No Reply was filed.

Plaintiffs argue the Court "inadvertently omitted its [sic] findings that claims under Counterclaims III and IV that arose prior to January 15, 2019 were barred by the applicable statute of limitations." ECF No. 371 at 3. At best, this incomplete sentence is confusing. However, it is true the Court found a four year statute of limitation was applicable to Defendant Lawrence Blackmon's Counterclaims III and IV. ECF No. 328 at 26. It is also without dispute that Defendant Blackmon filed his Counterclaim on January 15, 2019. ECF No. 8. But, the filing of the Counterclaims does not translate into Plaintiffs' contention that claims which "arose prior to January 15, 2019" were barred by the statute of limitations.

1

2

I.       **Plaintiffs' Request for Rule 60 Relief Relating to Blackmon's Counterclaims III and IV Asserting Infringement of CAMEO's Live Performance Mark is granted in part and denied in part**.

3

4

5

6

7

8

9

10

11

In its original Order, the Court granted summary judgment in favor of Plaintiffs Jeryl Bright ("Bright"), Gregory Johnson ("Johnson"), Arnett Leftenant ("A. Leftenant"), and Nathan Leftenant ("N. Leftenant") and against Defendant Blackmon on Blackmon's Counterclaims III and IV relating to live performances stating the decision was based on an application of the doctrine of laches.  ECF No. 328 at 32.  The original Order was modified on August 11, 2022 as to Plaintiffs Johnson and N. Leftenant.  ECF No. 357 at 25-26.  With respect to N. Leftenant the Court found that N. Leftenant retained no rights to the CAMEO marks after 2005.  *Id*. at 25.  With respect to Johnson, the Court revised its original Order finding a question of fact regarding his use of the CAMEO live performance mark in 2012.  *Id.* at 26.

12

13

14

15

16

17

18

19

20

21

The original Order on Summary Judgment was not modified as to Bright or A. Leftenant. *See id*., generally.  As to these two Plaintiffs the Court found Blackmon could not state an infringement claim based on use of CAMEO's live performance mark because there was no evidence either Bright or A. Leftenant performed live under the CAMEO mark during the four year statute of limitation period applicable to Blackmon's Counterclaims III and IV.  ECF No. 328 at 27.  To the extent the Order section of ECF No. 328 referred to the doctrine of laches creating confusion, the Court clarifies and reiterates its original Order.  Blackmon's Counterclaims III and IV asserting trademark infringement based on live performances by Bright or A. Leftenant fail as a matter of law. There is no evidence that either of these parties performed live during the four year statute of limitations applicable to these claims.

22

23

24

25

26

Further, the Court grants Plaintiffs' instant Motion as to Johnson.  The only evidence presented to the Court showed he performed with the ORIGINAL CAMEO FAMILY in 2012.  ECF No. 328 at 27.[1]  Summary judgment was granted in Johnson's favor and against Blackmon on Blackmon's Counterclaims III and IV, asserting infringement of CAMEO's live performance trademark, based on this fact.  *Id*. at 32.  In the Order addressing a reconsideration request made by

27

28

---

[1]        With respect to Plaintiffs' performances as the ORIGINAL CAMEO FAMILY, Blackmon did not dispute these occurred on six occasions with the first on October 12, 2012 and the last on September 26, 2015.  *Id* at 5 *citing* ECF No. 284 at 19 ¶ 59.

Blackmon the Court erroneously reversed this decision.  ECF No. 357 at 26.  The Court corrects its error, reinstates its original holding, and confirms that Blackmon's Counterclaims III and IV for live performances, asserted against Johnson, fail as a matter of law because there is no evidence to support his live performance under the CAMEO mark after 2012.

The Court also previously reconsidered and entered a revised Order with respect to N. Leftenant allowing Blackmon's Counterclaims III and IV, relating to live performances, to proceed to trial.  ECF No. at 25-26.  Unlike Bright, Johnson, and A. Leftenant, there is evidence that N. Leftenant performed live on multiple occasions as the ORIGINAL CAMEO FAMILY, with at least one performance occurring within the four year statute of limitations applicable to Blackmon's Counterclaims III and IV.  As such, the Court correctly stated and does not revisit its decision that Blackmon's Counterclaims III and IV, asserting infringement of the live performance CAMEO mark, will proceed to trial against N. Leftenant to be addressed through application of the doctrine of laches and, if unsuccessful, whether Blackmon is able to prevail on his infringement claims, which requires a demonstration that use of the mark is likely to cause confusion, mistake, or to deceive. ECF No. 357 at 25-26.

**II.    Rule 60 Relief Regarding Plaintiffs' Assertion of Co-Ownership of the CAMEO Marks is denied**.

Plaintiffs next ask the Court to reconsider its decision that Blackmon continues ownership of and right to use the CAMEO marks as each Plaintiff left the band and ceased all association with its operation.  While the timing of each departure differed, the Court's original Order on Summary Judgment analyzed the facts and law in detail.  *See* ECF Nos. 328 at 13-23.  The Order reconsidering N. Leftenant's ownership rights revised the original holding as to him only, but again provided thorough analysis for the same.  ECF No. 357 at 15-20.  Plaintiffs point to no manifest error, no change in the law, no mistake of fact or law, and no newly discovered evidence warranting reconsideration of these decisions.  Plaintiffs' request is denied.

The Court discussed *Robi v. Reed*, 173 F.3d 736 (9th Cir. 1999), a case frequently cited when discussing rights to musical groups' trademarks.  The Ninth Circuit found "there is no inalienable interest" in a musical group's marks that attaches "to … departing member[s]" of such a group.  *Id*.

at 740.[2]  The Court also discussed, in detail, *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114 (11th Cir. 2018).  The Court noted that the defendant, McClary, was an original member of The Commodores, left the group in 1984, and next performed with The Commodores in 2010.  *Id*. at 1123.  While McClary and other former Commodores' members performed live in 2009 billing the performance as the "Commodores Reunion," and in 2010, McClary appeared with The Commodores when a guitarist became ill, he "[a]t no point … ask[ed] to rejoin the group."  *Id*. at 1124.  In 2013 McClary formed a group called "Commodores Featuring Thomas McClary" and scheduled a performance in New York.  *Id*.  Commodores Entertainment Corporation sued him one year later in 2014.  *Id*. at 1125.  After considering the above, and other facts not summarized here, the Eleventh Circuit concluded that "[c]ommon-law trademarks existed in the name 'The Commodores,' and the original owner of the marks was the group as a whole" because "the marks were used in commerce, beginning with the early days of the group's performances and recordings …"  *Id*. at 1132.  Thus, McClary, along with others, as a member of the original group, was one of the holders of rights to The Commodores marks.  *Id*.  However, as found by the Ninth Circuit in *Robi*, the Eleventh Circuit found "[o]wnership of the marks did not stay with McClary when he left the performing group."  The marks "***could not be divided from the group***" and given to individual members.  *Id*. (emphasis added).  The court based this decision on McClary's departure from the group more than three decades before the suit was filed and that no reasonable juror "could have found that McClary remained with the group."  *Id*.  The court found that over a 15 year period McClary had no interaction with The Commodores and his single performance in 2010, and a "listening session" with a few members of the group that same year, "in no way suggest[ed] continued involvement with the group."  *Id*.  The court concluded: "On this record … the common-law rights to the marks remained with the group members who continued to use and exert control over the group The Commodores …."  *Id*. at 1132-33.

---

[2]    In *Robi*, the court concluded that Reed founded The Platters in 1953 and was joined by Robi in 1954; Reed managed the group; was the only surviving member of the original group, and was the only member who continuously performed with the group; whereas, Robi left the group and never returned, ceased performing at all for a number of years, and was deceased. 173 F. 3d at 739-740.  The court further stated "it has also been held that a person who remains continuously involved with the group and is in a position to control the quality of its services retains the right to use of the mark.") *Id*. at 740 (citation omitted).  In the case of a musical group, each participant's "rights derive from his membership in the … group." *Id*. at 739.

Based on the above and additional case law, the Court found as follows with respect to each Plaintiff:

- Johnson:  Johnson had no involvement or participation in CAMEO after his departure from the band in 1982.  Johnson admitted he left CAMEO 18 years before the band released its last album in 2000.  Johnson effectively admitted there was a 30 year lapse between his last potential live performance with CAMEO, at best in 1982, and his live performance with the ORIGINAL CAMEO FAMILY in 2012.  Johnson also admitted that, at best, he last appeared on a CAMEO recording in 1982, and next participated in a recording with former members of CAMEO in 2016 when "We In The House" was released—a 34 year lapse in time.  These lapses in time and intermittent involvement in CAMEO did not support continuous use or intent to use the CAMEO marks in commerce.  The Court concluded, as a matter of law, Johnson did not retain an ownership interest in the CAMEO marks allowing his use after his departure from CAMEO in 1982.

- Bright:  Bright joined CAMEO in 1979, appeared on five of the 18 albums released by the band, and left the band in 1982.  Between 1982 and 2016, when Bright participated in the release of "We In The House," the only evidence of involvement with CAMEO was his sporadic appearances in live performances.  There was an 18 year lapse between when Bright admittedly left CAMEO and CAMEO's last album release in 2000.  There was a 34 year lapse between Bright's last appearance on a CAMEO recording (1982 when Bright left the band) and 2016 when "We In The House" was released.  The Court found Bright failed to demonstrate continuous use of the CAMEO marks in sound recordings and live performances after his departure in 1982.  On this basis, the Court found he did not retain ownership rights in the CAMEO marks.

- A. Leftenant:  There is no dispute that A. Leftenant participated in CAMEO for over six years.  However, except for a guest performance in the 2001-2002 time frame, A. Leftenant had no role with the band after his departure.  Except for recording and releasing the single "We In The House" in 2016 using the CAMEO mark, there was no evidence that A. Leftenant made any sound recordings under the CAMEO mark after he left the band in 1981. The evidence demonstrated A. Leftenant did not retain ownership rights to the CAMEO marks in sound recordings or live performance after his department from the band in 1981.

- Jenkins:  The Court found Jenkins was indisputably a founding member of CAMEO and the evidence supported that he continued to perform and record with the band through the date of his resignation in 2018.  However, between 2016 and 2018, the Court found a question of fact regarding Jenkins' continued co-ownership of the CAMEO marks.  The Court found Jenkins ceased ownership interest in the CAMEO marks upon his undisputed resignation from the band in 2018.

- N. Leftenant:  There is no dispute that N. Leftenant stopped performing with CAMEO sometime in 2005, while original founding members Blackmon and Jenkins continued as CAMEO after that date and until 2018 when Jenkins resigned from the band.  There is no dispute CAMEO last released a recording in 2000.  In 2016, N. Leftenant, with other Plaintiffs who had left the band, released "We In The House" using the CAMEO common law mark without Blackmon's (or Jenkins) involvement or permission.  No party disputes an absence of evidence regarding what N. Leftenant did between 2005, after he ceased performing with CAMEO, and 2011/12 when he formed and began intermittently performing as the ORIGINAL CAMEO FAMILY. Blackmon offered evidence, which N. Leftenant did not dispute, that CAMEO

"conducted thousands of live performances in the United States and abroad"; "CAMEO … [was] scheduled to perform its first live, in-person show since the onset of the COVID-19 pandemic on September 11, 2021, in Los Angeles, CA"; and "CAMEO has maintained and continues to maintain a robust national and international touring schedule." *See* ECF No. 282 at 4 ¶¶ 6-7. The totality of the evidence supported the conclusion that CAMEO, with Blackmon at the helm, continued operating as a musical group throughout the years after N. Leftenant ceased his relationship with the band. N. Leftenant provided no evidence of involvement with CAMEO for at least a six year period (2005 to 2011) at which point he created the ORIGINAL CAMEO FAMILY to which Blackmon objected in 2012. There is no dispute that N. Leftenant chose the name ORIGINAL CAMEO FAMILY to distinguish his group from CAMEO—that is, to demonstrate he was not performing as CAMEO, which Blackmon and Jenkins performed as through 2018. There is no evidence contradicting that Blackmon continued to oversee the operations of CAMEO after N. Leftenant ceased his relationship with the band in 2005. N. Leftenant released "We In The House" under the CAMEO mark in 2016 eleven years after his departure from the band. The totality of the evidence was insufficient, as a matter of law, to demonstrate N. Leftenant's continued, uninterrupted involvement with or control over CAMEO and, therefore, to create a question of fact regarding N. Leftenant's right to continued use of the CAMEO marks after 2005. However, the Court found Counterclaims III and IV asserted by Blackmon against N. Leftenant arising from live performances would proceed to trial on a material question of fact as to whether Blackmon's claims are barred by the doctrine of laches and, if not, whether Blackmon will be able to prevail on his infringement claims, which requires a demonstration that use of the mark is likely to cause confusion, mistake, or to deceive. With respect to Blackmon's claims relating to sound recordings, the Court denied summary judgment to Blackmon on his Counterclaims III and IV arising from alleged misappropriation of Blackmon's CAMEO marks in sound recordings because there are questions of material fact associated with the 2016 release of the "We In The House."

*See* ECF No. 328 and 357 for thorough discussions of the above.

Despite the above, Plaintiffs conclude they retained ownership of the CAMEO marks because CAMEO records continued to be sold on the open market. ECF No. 371 at 3. Plaintiffs cite *Marshal v. Treadwell*, 240 F.3d 184, 199 (3rd Cir. 2001) for the proposition that "[a] successful musical group does not abandon its mark unless there is proof that the owner ceased to commercially exploit the mark's secondary meaning in the music industry." This case does not reflect an error of law by the Court. There is no dispute that all Plaintiffs left CAMEO at some time before this litigation commenced. On the other hand, the evidence before the Court is that Blackmon, a founding member, remained continuously involved with CAMEO as a performer and manager from inception through the present. Plaintiffs do not argue, and there is no evidence offered by them, indicating Blackmon ever ceased to commercially exploit the CAMEO marks as a founding and continuous member of CAMEO. Importantly, the decision in *Marshal* pertained to rights belonging

1    to the group, not individual rights, after undisputed cessation of a relationship between the group
2    and individual members.  *Id.* at 199 ("[a] successful musical group does not abandon its mark unless
3    there is proof that the owner ceased to commercially exploit the mark's secondary meaning in the
4    music industry") (internal citation omitted).  *Marshal v. Treadwell* does not stand for the proposition
5    that former band members, who cease to have any involvement with the musical group, retained
6    trademark rights based solely on record sales.

7          The only other case cited by Plaintiffs is *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736
8    F.3d 1239 (9th Cir. 2013).  This case involved granting and then the appeal of a preliminary
9    injunction.  In prior litigation, Plaintiff, Herb Reed Enterprises ("HRE"), which "manages [Herb]
10   Reed's business affairs and holds his rights," sued defendants asserting HRE "owned the 'Herb Reed
11   and the Platters' mark and that defendants used a confusingly similar mark, namely 'The Platters.'"
12   *Id*. at 1244.  The outcome of prior litigation held defendant "(1) FPI never used the mark 'The
13   Platters' in a manner that [was] not false and misleading and thus never acquired common law rights
14   to the mark, and (2) Reed, having first used the mark 'The Platters' in commerce in 1953, and having
15   continuously used the mark in commerce since then has superior rights to the mark to all others,
16   including FPI and anyone claiming rights from or through FPI."  *Id. citing Herb Reed Enters. Inc.*
17   *v. Monroe Powell's Platters, LLC*, 842 F.Supp.2d 1282, 1287 (D. Nev.2012) (quoting the 2011
18   judgment) (some internal quote marks removed).  After considering facts related to the 2013 case,
19   the court granted a preliminary injunction in favor of HRE and against the defendants.  *Id*. at 1245.

20         The court rejected defendants' argument that HRE abandoned use of "Herb Reed and the
21   Platters" marks.  The court found defendant failed to establish either of the two requirements
22   necessary to establish abandonment; that is "(1) discontinuance of trademark use, and (2) intent not
23   to resume use."  *Id*. at 1247.  The Ninth Circuit stated that "[t]he standard for non-use is high. …
24   Non-use requires *complete* cessation or discontinuance of trademark use, where 'use' signifies any
25   use in commerce and includes the placement of a mark on goods sold or transported.  Even a single
26   instance of use is sufficient against a claim of abandonment of a mark if such use is made in good
27   faith."  *Id*. at 1247-48 (internal citations omitted).  Under the circumstances of the case, the court
28   found continuous use based on receipt of royalties "from domestic and international sales and names

a range of companies that pay royalties for the use of 'The Platters' original recordings in other compilations, television ads, movies, or other media." *Id.* at 1248.  The court stated the "receipt of royalties is a genuine but limited usage of the mark that satisfies the 'use' requirement, especially when viewed within the totality of the circumstances," which constrained HRE rights.  *Id.*

After citing this case, Plaintiffs, all former members of CAMEO, argue they used the mark for sound recordings when releasing "We In The House" in 2016, which was before Blackmon and Jenkins released "El Passo" in 2019.  However, after the departures from CAMEO by Bright, Johnson, and A. Leftenant in the very early 1980's, and N. Leftenant in 2005, the uncontroverted evidence demonstrates (1) these four Plaintiffs had no involvement with the management of CAMEO, (2) Johnson and N. Leftenant never performed with CAMEO, (3) A. Leftenant performed once with CAMEO sometime in 2001-2002, and (4) Bright performed with CAMEO on limited and sporadic occasions.  ECF Nos. 328 at 13-23; 357 at 15-22.  On the other hand, Blackmon continued, uninterrupted, to use and promote the CAMEO marks and manage CAMEO's business.  *See* ECF Nos. 282 at 4 ¶¶ 6-7; 328 generally.  If abandonment is considered, it is clear that Bright, Johnson, and A. Leftenant discontinued use of the CAMEO marks, and demonstrated no intent to resume use of the marks for over 30 years.  ECF No. 328 at 15-19.  N. Leftenant, who left CAMEO in 2005, did not use the CAMEO sound recording mark for 11 years and did not use the live performance mark for at least six years after which he performed as the ORIGINAL CAMEO FAMILY on six occasions over four years (2012 through 2015) to allegedly distinguish himself from CAMEO.  ECF No. 357 at 15-22.

"Although non-use [of a mark] for three consecutive years constitutes prima facie evidence of abandonment, the standard for non-use is high."  *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d at 1247 (internal citation omitted).  Here, the unrefuted evidence demonstrates Bright, Johnson and A. Leftenant completely ceased use of the CAMEO marks for well in excess of three years—indeed, ten times that length of time.  There is no evidence of N. Leftenant's use of the sound recording mark for 11 years (2005 to 2016); while he created the "ORIGINAL CAMEO FAMILY" in 2011—to distinguish himself from CAMEO—and performed under this banner a total of six times over a four year period.

"[T]o qualify as establishing 'use in commerce,' and not merely a token use to reserve rights in a mark, any such modest initial sales must have been made in a bona fide transaction, and they must be accompanied or followed by activities which would tend to indicate a continuing effort or intent to continue such use and place the product on the market on a commercial scale within a time demonstrated to be reasonable in the particular trade." *Lodestar Anstalt v. Bacardi & Company Limited*, 31 F.4th 1228, 1256 (9th Cir. 2022) (internal citations omitted).  While Plaintiffs Bright, Johnson, and A. Leftenant actively participated in CAMEO into the early 1980s, and sales of CAMEOs albums during the period of their involvement were presumably not modest, these Plaintiffs present no evidence of any activities that support the conclusion, let alone a reasonable inference, that they continued or intended to use and place the CAMEO marks in the marketplace at any time over a thirty-plus year period; that is, the early 1980s until 2016 when "We In The House" was released.  N. Leftenant had an eleven year gap in which he admits he was not recording as CAMEO.  This release was not followed by activities that tend to indicate a continuing effort or intent to use the CAMEO marks.  There was a seven year gap between his departure from CAMEO (2005) and his first performance as the ORIGINAL CAMEO FAMILY (2012) after which there was minimal activity, which N. Leftenant says was to separate his performances from those of CAMEO.[3] ECF No. 273-2 (N. Leftenant's Declaration) at 4 ¶ 24.  In contrast, Blackmon continued to promote CAMEO, a fact that was not disputed by Plaintiffs, including that he, as a member and manager of the band "conducted thousands of live performances in the United States and abroad"; and maintained a robust national and international touring schedule.

The facts of this case do not support the finding Plaintiffs apparently seek: that is, the mere fact of record sales, which Bright, Johnson, A. Leftenant, and N. Leftenant offer no evidence of any role or effort to promote after their respective departures from CAMEO, is sufficient to establish continued ownership rights to the CAMEO marks.  Indeed, given the unrefuted evidence, the Court finds Plaintiffs' argument runs directly counter to the reasoning in *Reed* and *Commodores*.  *See Marshak v. Schaffner*, Case No. 11 CV 1104(DLC), 2012 WL 1658393, at *7 (S.D.N.Y. May 11,

---

[3]     There were six performances of the ORIGINAL CAMEO FAMILY including October 12 and 13, 2012; August 29 and September 6, 2014; September 26, 2015, and an undated performance in Anniston, Alabama.

2012) ("trademark rights are generally found to rest in the group as a collective, … and are not found to follow an individual member who has left the group and seeks to use the rights to the exclusion of fellow group members.  *See Robi*, 173 F.3d … at 740.") (Internal citation omitted.); *UMG Recordings, Inc. v. Opendeal, Inc.*, Case No. 21 Civ 9358 (AT), 2022 WL 2441045, at *4 (S.D.N.Y. July 5, 2022) (finding UMG's failure to present evidence that since "at least in the early 2000s," it had not used the standalone "Republic" mark sufficiently to demonstrate "continuous commercial utilization" necessary to establish common law trademark rights") (citation omitted).

Plaintiffs, who resigned and indisputably departed from CAMEO long before "We In The House" was released in 2016, fail to present evidence sufficient to create a question of material fact regarding continuous commercial use of the CAMEO sound recording marks.  Plaintiffs also present insufficient evidence of continuous commercial use of the live performance marks to demonstrate rights to this CAMEO mark.  Plaintiffs request for relief under Rule 60 pertaining to the ownership interest in the CAMEO marks fails to provide a basis to alter the Court's prior decision and, therefore, this request is denied.

**III.    Order**.

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 60 (ECF No. 371) is GRANTED in part and DENIED in part consistent with the above.

Dated this 23rd day of January, 2023.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE