UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NATHAN LEFTENANT, ARNETT LEFTENANT, JERYL BRIGHT, GREGORY JOHNSON, and THOMAS ("TOMI") JENKINS,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>LAWRENCE ("LARRY") BLACKMON,<br><br>　　　Defendant. | Case No. 2:18-cv-01948-EJY<br><br>**ORDER** |
| LAWRENCE ("LARRY") BLACKMON,<br><br>　　　Counterclaim Plaintiff,<br><br>　　　v.<br><br>NATHAN LEFTENANT, ARNETT LEFTENANT, JERYL BRIGHT, GREGORY JOHNSON, and THOMAS ("TOMI") JENKINS,<br><br>　　　Counterclaim Defendants. | |

**I.　Introduction**

Currently pending before the Court are competing Motions for Attorney's Fees filed by the parties. ECF Nos. 413, 414. I reviewed the Motions, Oppositions (ECF Nos. 415, 416), and Replies (ECF Nos. 417, 420).[1] The Motions are denied. After reviewing the totality of the history of this case I exercise my considerable discretion and find an award of fees is not warranted. While Defendant/Counterclaim Plaintiff Blackmon (hereinafter "Blackmon") alleges Plaintiffs/Counterclaim Defendants (hereinafter "Plaintiffs") raised various frivolous claims, Plaintiffs allege the same.

By way of example, Blackmon's Counts I and II, asserting trademark counterfeiting and trademark infringement under § 32 of the Lanham Act, were only viable if the trademark at issue was registered. *Kendall-Jackson Winery, Ltd. v. E & J Gallo Winery*, 150 F.3d 1042, 1047 n. 7 (9th

---

[1] The parties are well versed in the facts and proceedings in this case. Hence, they are not repeated here.

Cir. 1998) (citation omitted); *United Tactical Systems, LLC v. Real Action Paintball, Inc.*, Case No. 14-cv-04050-MEJ, 2014 WL 6788310, at *6 (N.D. Cal. Dec. 2, 2014) (§ 32 of the Lanham Act must be based on "infringement and counterfeiting of a registered trademark … brought by the registrant of the … mark") (internal quote marks omitted); *Synergy Tech & Design, Inc. v. Terry*, Case No. C 06–02073 JSW, 2007 WL 1288464, at *4 (N.D. Cal. May 2, 2007) (no potential for suit recovery for infringement before the mark was registered). Despite never registering any trademark for sound recordings and first registering a mark for live performances in March 2017, Blackmon pursued § 32 claims against all Plaintiffs without considering the limitations of the law. Plaintiffs pursued a claim for tortious interference with contract under a continuing violation theory rejected by the Nevada Supreme Court, and based on Blackmon's refusal to mediate, a non-existent requirement in the contracts at issue. In sum, setting aside the sniping and overblown rhetoric, I find the cross award of attorney's fees is not justified in this case.[2]

**II.   Discussion**

   **A.   Fees Under 28 U.S.C. §1927.**

A court "may" award attorney's fees under 28 U.S.C. § 1927 against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously ... to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Ninth Circuit holds § 1927's "unreasonably and vexatiously" language "implies a bad faith or intentional misconduct requirement not explicit in the statute." *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir. 1982). Therefore, "[s]anctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (internal quotation marks omitted). The Ninth Circuit recognizes "bad faith is present when an attorney knowingly or recklessly raises a frivolous argument." *Id*. (internal quotation marks and alteration omitted). An argument is frivolous if its resolution "is obvious" or the argument is "wholly

---

[2]   I have no obligation to explicitly address each and every one of the arguments made by the parties, some of which are repetitive. *Chagby v. Target Corp.,* Case No. CV 08-4425-GHK (PJWx), 2009 WL 398972, at * 1 (C.D. Cal. Feb. 11, 2009) ("We need not, and are not required to, address every single allegation made in [p]laintiff's Complaint, or argument made in [p]laintiff's opposition, in the Order."); *Salinas v. City of San Jose*, Case No. 5:09-cv-04410-EJD, 2011 WL 3739555, at *3 (N.D. Cal. Aug. 23, 2011) ("[T]he fact [that] the court did not address every point or every case cited by [defendant] ... does not equate to a failure to consider dispositive arguments ….").

2

without merit." *Nat'l Mass Media Telecomm. Sys., Inc. v. Stanley*, 152 F.3d 1178, 1181 (9th Cir. 1998) (internal quotation marks omitted).

All told, there were five Plaintiffs who raised five claims against one Defendant—Blackmon—who raised six counterclaims against the Plaintiffs. As the parties aptly summarized in the Joint Pretrial Order: (i) I issued my initial decision on cross motions for summary judgment on March 4, 2022 (ECF No. 328); (ii) on August 11, 2022, I issued an Order granting in part and denying in part Blackmon's motion for reconsideration (ECF No. 357); (iii) on November 14, 2022, I issued an Order modifying my August 11, 2022 Order (ECF No. 365); (iv) on January 18, 2023, I issued an Order reconsidering my August 11, 2022 Order in part (ECF No. 377); (v) on January 23, 2023, I issued an Order further reconsidering, in part, the parties' summary judgment motions and my August 11, 2022 Order (ECF No. 380); and (vi) on January 26, 2023, I issued an Order still further reconsidering my summary judgment Order (ECF No. 387).

As a result of these Orders (i) Plaintiffs demonstrated co-ownership of the CAMEO marks through the dates of their respective departures from the band despite Blackmon's claim no Plaintiff ever had any right to the band's marks, (ii) Plaintiff Tomi Jenkins ("Jenkins") was found liable on Counterclaims I-IV, but only for activities occurring after his 2018 resignation from CAMEO, (iii) Blackmon's Counterclaims I and II against Plaintiffs Nathan Leftenant, Arnett Leftenant, Gregory Johnson, and Jeryl Bright arising from sound recordings were dismissed, (iv) Blackmon's Counterclaims III and IV against A. Leftenant, Johnson, and Bright arising out of the alleged use of the CAMEO mark in connection with live musical performances were dismissed, and (v) all of Plaintiffs claims against Blackmon were dismissed. Some additional claims were to proceed to trial. Thus, although it is fair to say Blackmon prevailed more than Plaintiffs, the details of the events involving each Plaintiff's respective involvement with CAMEO defies a finding of subjective bad faith by Plaintiffs, which in turn yields the same finding with respect to Blackmon's Counterclaims.[3]

---

[3] If any claim by Plaintiffs was frivolous so was Blackmon's claims under § 32 of the Lanham Act as Blackmon never registered a CAMEO mark in sound recordings.

The law is clear that district courts enjoy broad discretion in determining whether sanctions under § 1927 are appropriate, and if so, in what amount.[4] *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995).  Fees are not recoverable for filing a frivolous suit.  *Meza-Perez v. Sbarro LLC*, Case No. 2:19-cv-00373-APG-NJK, 2020 WL 5848091, at *3 (D. Nev. Sept. 30, 2020) ("The statute cannot be used to sanction counsel for filing a frivolous complaint.").  Without repeating the long history of the parties' relationships, the representations made regarding early promises and Blackmon's representations in 2011 and 2012 that he was entitled to 100% of CAMEO recording royalties[5] support my finding that there was no improper purpose underlying Plaintiffs' original Complaint or subsequent attempt to amend their Complaint, albeit clumsy and repetitive.  While Plaintiffs pursued an interference with contract claim that was the product of misguided legal research, there is nothing demonstrating the purpose of the claim was to delay or harass Blackmon.[6] *Bergquist v. FyBX, Corp.*, Case No. Civ-A. 02-722, 2003 WL 22384934, at *3 (E.D. La. Oct. 15, 2003) (relating to a request for Rule 11 sanctions, the court stated: "Although the Court … found the federal claims legally groundless, the Court is convinced that [their] filing ... is the product of ineptitude and misguided legal research, rather than a failure to attempt a reasonable inquiry into the law or an intent to harass.") (internal citation omitted).

Likewise, I find no improper purpose underlying Blackmon's claims under § 32 of the Lanham Act despite the law's registration requirement and Blackmon's failure to ever register a mark for sound recordings and first registering the live performances mark in March 2017.  Were claims under § 32 of the Lanham Act misguided? Yes.  But there is nothing to support a finding of subjective bad faith.  *Id*.  There was no wholesale failure to attempt a reasonable inquiry into the facts and law.  *Id.*[7] *Efficient Frontiers, Inc. v. Marchese*, Case No. CV 16-06920 DDP (AGRx),

---

[4] Plaintiffs' multiple filings of a proposed Second Amended Complaint, some of which Plaintiffs voluntarily withdrew, while careless, were insufficient to demonstrate subjective bad faith.  That is, the manner in which Plaintiffs litigated their case, while at times clumsy, was not so egregious as to be vexatious.

[5] ECF No. 273-1 at 259 (email to AARC claiming 100% of Cameo royalties for Blackmon); ECF No. 275-6 at 15 (email to SoundExchange claiming 100% royalties for Blackmon)

[6] The letters from Blackmon's counsel in January and March 2019 primarily relate to settlement.  To the extent Blackmon pointed out weaknesses in Plaintiffs' case, these letters are not sufficient to demonstrate fees should be awarded to Blackmon under any theory he advances.

[7] Blackmon's repeated reference to a "smoking gun" contract for a performance in Flint, Michigan dated in 2017 is of no moment.  First, there is a tinge of vindictiveness to Blackmon's continued effort to gather and present evidence against Plaintiffs after the parties settled their difference.  Second, Blackmon's relentlessness is surprising given that

2016 WL 7117243, at *4 (C.D. Cal. Dec. 6, 2016) ("Section 1927 sanctions 'must be supported by a finding of subjective bad faith.' *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002). This means that "if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." *In re Keegan Mgmt. Co., Sec. Lit.*, 78 F.3d 431, 436 (9th Cir. 1996). '[R]eckless nonfrivolous filings, without more, may not be sanctioned.' *B.K.B.* 276 F.3d at 1107.).

This case involved six individuals with relationships going back 40 years in the music industry. There were claims arising from unregistered trademarks for most of that history. There were also common law claims and federal intellectual property claims. Mistakes of fact and law were made by the parties, but none was so frivolous as to support the conclusion that there was an intent to mislead or there was subjective bad faith when claims were asserted and pursued. Under the equitable discretion granted to me, I deny the request for attorney's fees under 28 U.S.C. § 1927.

B.     Fees Under the Lanham Act.

In *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016), the Ninth Circuit relied on the decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc*, 572 U.S. 545 (2014), to abrogate its prior decision in *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993), and modify the standard definition of "exceptional" applicable to motions for attorneys' fees in Lanham Act cases. *SunEarth, Inc.*, 839 F.3d at 1180. The Ninth Circuit held that "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case [is] exceptional, exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty* [*v. Fantasy, Inc.*, 510 U.S. 517 (1994)] and using a preponderance of the evidence standard." *Id.* at 1181 (internal citation omitted). Moreover, the *Octane Fitness* Court noted that the word "exceptional" was not defined in the Patent Act being discussed and, thus, construed the term "in accordance with [its] ordinary meaning." 572 U.S. at 553 (internal quote marks and citations omitted). The Supreme Court then stated "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the

---

when summary judgment motions were exchanged he did not move to reopen discovery or for Rule 56(d) relief pertaining to the Michigan contract. Third, nothing suggests that Nathan Leftenant knew who drafted the contract before Blackmon obtained metadata from an unknown source apparently long after summary judgment was decided.

5

unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. at 554 (internal footnote omitted). "[I]t is the 'rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees.'" *De Simone v. VSL Pharm., Inc.*, Case No. TDC 15-1356, 2019 WL 2569574, at *5 (D. Md. June 20, 2019) (quoting *Octane Fitness*, 572 U.S. at 555).

Neither Plaintiffs' nor Blackmon's many arguments in support of attorney's fees under the "exceptional" standard prevail. To support an award of fees based on this standard I must find a defendant (here Blackmon originally and Plaintiffs on the counterclaims) engaged in "malicious, fraudulent, deliberate or willful infringement." *Sun Earth*, 839 F.3d at 1181 *citing, e.g.*, *Lindy Pen Co.*, 982 F.2d at 1409, *superseded by statute on other grounds*, Trademark Amendments Act of 1999, Pub. L. No. 106-43, 113 Stat. 218. There is no doubt some Plaintiffs pursued claims of co-ownership of CAMEO's registered and unregistered marks despite having no or very little contact with the band for decades. But these Plaintiffs (later Counter-Defendants) did not engage in conduct infringing on CAMEO marks maliciously or fraudulently. Indeed, Blackmon claimed no Plaintiff ever had co-ownership of the CAMEO marks despite the law and facts demonstrating the contrary. Jenkins performed uninterrupted with Blackmon as part of CAMEO for over 40 years until he resigned sometime in 2018 based on conduct by Blackmon he found intolerable.[8] There is no dispute that Nathan Leftenant performed with CAMEO for decades appearing on 16 of the 18 albums the band released. *See* ECF No. 328 at 21. Nathan Leftenant released a single under the CAMEO mark in 2016 (during the time his application for a trademark was pending), sixteen years after CAMEO released its last album in 2000. *Id*. at 23. Further, while Plaintiffs' counsel pursued a claim for intentional interference with contract under theories rejected by Nevada law or that were time barred, Blackmon raised claims of live performances under the CAMEO mark against some Plaintiffs without any evidence to support this claim. Plaintiffs' counsel filed confidential documents without sealing the same on more than one occasion resulting in sanctions. Blackmon claimed entitlement to 100% of CAMEO's royalties prior to the commencement of litigation despite knowing there were

---

[8] ECF No. 357 at 19, n.17.

other featured artists, including Plaintiffs, who were entitled to share in such royalties.[9] Blackmon repeatedly references Plaintiffs' counsel's erroneous statement that Jenkins never left the band, while counsel for Plaintiffs explains she was unaware of an email Jenkins sent regarding his 2018 resignation from CAMEO before it was disclosed during discovery. Blackmon pursued Counterclaims I and II under § 32 of the Lanham Act despite the fact that he never registered a mark for sound recordings—a requirement to state such a claim well-established by the law.

In sum, when the facts are parsed and the law applied, I find the exercise of equitable discretion demonstrates neither Plaintiffs nor Blackmon presented the rare case in which an exceptional claim was raised warranting the award of attorney's fees under the Lanham Act.

C.     The Inherent Power to Sanction.

As explained in *Chambers v. NASCO*, 501 U.S. 32, 50 (1991), while there is nothing that prevents a federal court from resorting to its inherent power to sanction for bad faith conduct even if the conduct is also sanctionable under another statute or rule, courts must "exercise caution in invoking its inherent power, and … comply with the mandates of due process, both in determining that the requisite bad faith exists …." *Id*. at 50 (internal citation omitted).  The Ninth Circuit states: "[f]or purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar the assessment of attorney's fees." *In re Itel Securities Litigation*, 791 F.2d 672, 675 (9th Cir.1986) (internal citation omitted).  While the acrimony expressed by each counsel towards his/her opposing counsel is palpable (and without a proper place in federal court proceedings), the litigation—as best demonstrated by the mixed results and remaining claims at the time of resolution—demonstrate aggressive litigation, some carelessness, and strong belief in respective positions rather than vindication, obduracy or *mala fides*.  A finding of bad faith by either counsel is, again, rejected.  Thus, I reject the request to exercise my inherent authority to impose sanctions against any party or counsel in this action.

---

[9]     *See infra* n.5.

### III. Order

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Attorney Fees (ECF No. 413) and Defendant's Motion for Attorneys' Fees (ECF No. 414) are DENIED.

Dated this 29th day of August, 2023.

                                                                   _____
                                                                   ELAYNA J. YOUCHAH
                                                                   UNITED STATES MAGISTRATE JUDGE